PARKER *et al.*, executors, *v.* BARLOW *et al.*

1. One who sells a mass of timber, consisting of trees suitable for firewood which have been cut down and are still lying upon his land, receiving a gross price therefor, upon an estimate that the quantity will prove to be so many cords of wood, and warranting that the quantity shall consist of that number of cords, is liable upon his warranty for any deficiency in the estimated quantity; but the measure of damages for a breach of the warranty is not the market value of the wood, but a due proportion of the purchase money, with interest thereon.

2. In such case, if some of the wood was actually received by the buyer and no act remained to be done by the seller to complete delivery of the residue, title to the residue, as well as to the part received, vested immediately in the buyer; and if after the death of the seller his executors, whether acting professedly in their representative capacity or not, prevented the buyer by any wrongful act from entering upon the land and converting the trees into cord-wood and removing the same therefrom, this would be a mere personal tort by the executors for which they would be liable personally but not in their representative capacity. If they merely objected to an entry, without doing or threatening to do any violent act to prevent it, the objection could and should have been disregarded, as the license of the testator to enter for removing the wood was not revocable either by himself or by his personal representatives.

3. If the delivery of the residue was incomplete at the death of the testator, it was the duty of the executors to complete the delivery, and they were subject to an action in their representative capacity for refusing so to do, and the measure of damages would be the market value of the trees as they lay upon the ground at the time delivery ought to have been made. As to any deficiency in the quantity, the breach of warranty would be the basis of action, and the measure of damage the same as indicated above in the first head-note.

April 23, 1894. Argued at the last term.

Complaint for damages. Before Judge FISH. Sumter superior court. November term, 1892.

Barlow and Coleman sued Malissa and Joseph Parker as executors of Barney Parker, alleging that Barney Parker sold them a lot of wood in trees unsplit lying upon his land, for $150, verbally guaranteeing that it

contained 440 cords; that under the terms of the sale plaintiffs were to split and haul the wood off the land; that they paid Barney the $150 before his death, and in accordance with the contract had hauled off and sold five cords of wood; that after Barney's death defendants refused to permit them to enter upon the land and split and sell the wood, but took charge of the wood, split and sold it, and appropriated the proceeds to the account of Barney Parker's estate, thereby damaging plaintiffs $950. By amendment they alleged, that they bought of Barney 440 cords of wood and paid him $150 therefor; that when the wood was bought it was in trees lying on the ground not cut up, and Barney being anxious to have it cut up and hauled off, plaintiffs bought it and paid him the purchase price, and prepared to cut and haul it, and partly executed the contract, and afterwards Barney died; that the wood was on his land in the shape of trees and undelivered at the time of his death, and never was afterwards delivered, but delivery was refused by defendants; that after defendants had qualified as executors, plaintiffs went after their wood to cut and haul it to market, but defendants refused to deliver it to them and to allow them to have said trees or to cut them into wood, and thereby plaintiffs could not get their trees or wood contained in them, but defendants retained the wood, worth $900, and used it for the benefit of the estate.

The testimony for the plaintiffs showed, that in February, 1889, they made a contract with Barney Parker for the purchase of a lot of wood which had been cut down and was lying on his land, for the sum of $150, he guaranteeing that there would be as much as 440 cords. They paid him $75, and by agreement were to pay the balance in sixty days. They commenced to split and haul wood on making the first payment, hauled away not over five cords on that day, but got no more

afterwards. In March they paid Parker the remaining
$75 and $3.60 extra for interest. After this Parker
died, and Joseph Parker, one of his executors, asked
plaintiff Coleman if the wood was his (Coleman's), and
if it was paid for. On being told that it was, he said
he did not know much about it; that he had decided to
object to Coleman's hauling; that he would wait awhile
and see Speer (who was acting for Malissa Parker, ex-
ecutrix, in the management of the estate.) Afterwards
Speer came up, and said plaintiffs could not get the
wood. The market value of the wood, after paying for
splitting and hauling it, was ninety cents or more per
cord.

For defendants Joseph Parker testified: After Barney
Parker's death, this was Mrs. Parker's farm individually.
Whatever Speer did thereon was for her individually.
Witness took possession of the wood individually.
Plaintiffs had hauled for a long time after Barney
Parker's death; they had two or three wagons running
for about two months. When witness took possession,
it had been picked over, and the wood was nearly all
refuse. He paid forty cents a cord to have it corded
up, and sold it for $1.25 a cord, there being 97½ cords.
That is all that he got for it. He did not make any
objection to plaintiffs getting it. He spent the money
he received for it. He was the executor at that time, but
did not use the money in that way; did not use it for
the estate, but for himself. In the conversation between
witness and plaintiffs, he told them he would rather they
would wait and not move the wood until he had investi-
gated the matter; that he thought the wood was not
paid for. He did not afterwards tell them they could
move it off. It was a good while after that conversa-
tion before witness moved it off; it might have been the
latter part of that year or the first of the next. He was
in possession of the premises, at the time he took charge

of this wood, in his individual capacity.. The premises were in Barney Parker's possession at his death.

The jury found for the plaintiffs $391.50 as the value of 435 cords of wood. Defendants moved for a new trial on the grounds indicated in the decision. The motion was overruled, and they excepted.

L. J. Blalock and E. C. Speer, for plaintiffs in error.
J. C. Mathews and J. A. Ansley, contra.

Simmons, Justice.

1. The pleadings and the evidence, so far as material, will be found in the official report. It will be seen by reference to the pleadings that the plaintiffs sought to recover upon one or the other of two theories set out in the declaration. One of these theories was, that they had purchased a quantity of wood, consisting of a number of trees which had been felled by the testator of the defendants and were lying upon his land; that he warranted that there were 440 cords; that they paid him $150 for the trees as they lay upon the land, and that there was a breach of the warranty in that they did not receive that many cords, because the executors refused. to allow them to enter upon the land and cut, split and remove the trees. The other theory was, that they purchased from the testator this quantity of wood, and that he delivered to them five cords of it before his death, and that after his death his executors refused to deliver the rest of the wood when requested to do so, whereby the plaintiffs were damaged, etc. Upon both of these theories the trial judge gave the same charge to the jury in relation to the measure of damages. After reciting the pleadings, he instructed them that the plaintiffs would be entitled to recover against the executors the market value of the wood the former had failed to cut by reason of the refusal or objection of the defendants to allow them to go upon the land and,

cut or haul it away. We think this charge was error, as applied to the original declaration, which, in substance, was an action for breach of warranty. Where one sells to another a quantity of wood lying upon his land, receiving a gross price therefor, upon an estimate that the quantity will prove to be so many cords of wood, and warranting that the quantity shall consist of that number of cords, he is liable upon his warranty for any deficiency in the estimated quantity; but the measure of damages for a breach of the warranty is not the market value of the wood, but a due proportion of the purchase money, with interest thereon. To illustrate: If the testator guaranteed that there were 440 cords and the purchasers received only one fourth of this quantity, the vendor or his executors would not be liable for the market value of the three fourths not delivered, but would be liable only for three fourths of the purchase money, in an action for the breach of the warranty. Upon the other theory of the case, if the testator had not completed the delivery of the wood at the time of his death, it was the duty of his executors to complete it, and if they failed or refused to do so when requested, an action could be maintained against them in their representative capacity, and the measure of damages in that case would be different from that above announced. In the latter case they would be liable for the market value of the wood as it lay upon the ground at the time the delivery ought to have been made. This measure would apply to all the wood actually there which the executors ought to have delivered, but would not apply to any shortage. Touching the shortage, that is any deficiency in the quantity warranted, the recovery would not be for a failure to deliver, but for a breach of the warranty by reason of the non-existence of some part of the wood paid for, and as to this the recovery would be measured by a due proportion of the price paid.

2. The defendants were sued in their representative capacity, it being claimed that as executors they refused to allow the plaintiffs to enter upon the land and haul the wood. The defendants denied that they were liable as executors. In our opinion, their liability would depend upon whether the delivery of the wood was completed in the lifetime of the testator. If some of the wood was actually received from the testator and no act remained to be done by him to complete the delivery of the residue, title to the residue, as well as to the part received, vested immediately in the buyers; and if after his death his executors, whether acting professedly in their representative capacity or not, prevented the buyer by any wrongful act from entering upon the land and converting the trees into cord-wood and removing the same therefrom, this would be a mere personal tort by the executors for which they would be liable personally but not in their representative capacity. If they merely objected to an entry upon the land, without doing or threatening to do any violent act to prevent it, the plaintiffs could and should have disregarded the objection, because the law is, that where an owner of land sells trees lying upon the ground, they are personal property, and by the act of selling them he gives the purchaser an implied license to enter upon the land and remove them, if the purchaser does so within a reasonable time. Having sold the trees and received the purchase money for the same, the title vests in the purchaser, and the implied license to enter upon the land and remove the trees is irrevocable, either by the seller or his personal representatives. See Tiedeman on Sales, §97, and authorities cited.

3. The other question in the case is fully covered by the third head-note, with what has been said above under the first head of this opinion.    *Judgment reversed.*