### 2482, 2483.   WHITLEY *v.* NEWMAN. (two cases).

1. When it is questionable whether words alleged to be slanderous impute a crime, or whether the facts and circumstances attending the utterance of the words render the communication a matter of privilege, the question should be submitted to the jury.

2. The office of an innuendo is merely to explain the ambiguity, where the precise meaning of terms employed in an alleged slanderous statement may require elucidation. The true scope and meaning of the statement can not be enlarged or restricted by innuendo.

3. The statement that one is "short" in his accounts does not necessarily impute to him the crime of larceny after trust, where, according to the true meaning of the statement and the language accompanying it, the offense would not be complete unless there had been a refusal to pay for

or deliver the property which it might be inferred had been appropriated. The word "short"does not of itself imply a crime. It is a term of common use in the stock and produce markets. To say that one is "short," in the vernacular of the exchanges, implies only that one has less of a commodity than may be necessary to meet demands and obligations. It does not imply that the commodity can not or will not be supplied upon demand.

4. Statements in response to inquiries as to another person, when the inquirer is one naturally interested in his welfare, are privileged. They are statements made in the performance of a private moral duty, within the purview of the Civil Code (1910), § 4436, par. 2. Likewise, statements not influenced by malice, but made in good faith, to effect the collection of an indebtedness justly due, are privileged, under the Civil Code (1910), § 4436, par. 3.

5. Under the circumstances stated in the petition, a demand and refusal to pay for or deliver goods intrusted to the plaintiff would have been necessary, to constitute the offense of larceny after trust; and nothing was said by the defendant from which it could fairly be implied that there had been a criminal conversion of the property, or a refusal, upon demand, to account for its proceeds. The alleged slanderous statement was cautionary, rather than incriminatory.

6. In order for one to impute a crime to another, in such a sense as that the imputation is actionable as slander, it is not necessary that the descriptive averments or essential ingredients by which the nature of the crime is defined should be stated with that distinctness requisite in an indictment. But, on the other hand, it is not enough that the party to whom the remark is addressed may unwarrantably reach the conclusion, from the language used, that a crime is being imputed to the person to whom the speaker refers. For a defamatory oral utterance to be slanderous as imputing a crime, the statement must not only be such as may convey to the auditor the impression that the crime in question is being charged, but it must be couched in such language as might reasonably be expected to convey that meaning to any one who happened to hear the utterance.

7. Even if the communications in this case alleged to be slanderous were not privileged, they did not necessarily impute a crime, no special damage was alleged, and the court did not err in sustaining the general demurrers and dismissing the petitions.

DECIDED FEBRUARY 28, 1911.

Actions for slander; from city court of Americus—Judge Crisp. February 2, 1910.

*W. P. Wallis, Maynard & Hooper,* for plaintiff.

*J. A. Ansley, Hardeman, Jones, Callaway & Johnston, Shipp & Sheppard,* for defendant.

RUSSELL, J.    Whitley brought two actions against Newman for slander. Both were dismissed on demurrer, and exception is taken to this disposition of the cases. In one of the petitions Whitley al-

leges that the slanderous words were used to his wife, and in the other case that Newman was speaking to him in the presence of one Kaehm. In the petition in which it is alleged that the slanderous words were spoken to his wife the statement is as follows: "Mr. Whitley is short with us [meaning Morris & Co.]. For your [meaning Mrs. Whitley] own good, you had better give me this mortgage, for in the wind-up you will have to pay it." Mrs. Whitley asked, "What will you do if I don't secure it?" Newman replied, "I will have him [meaning your petitioner] arrested and put in jail." Mrs. Whitley asked, "What good will that do?" Newman replied, "It will be an example," and stated, in the same connection, that he [Newman] "had already had a young man arrested in South Georgia for the same cause." In the action based upon the alleged slanderous words used in the presence of Kaehm, it is asserted that the defendant slandered the plaintiff by saying to him in the presence of Kaehm: "I have just had a conversation over the phone with a party in South Georgia, where he was short with us just like you are. He refused to do anything, and we had him arrested and put in jail. His father is now trying to sell his property at a sacrifice, to get him out. I hope this will not be the case with you." With the exception of the variation in the language of the alleged slanders, the petitions in the two cases are substantially the same. With the amendments which were allowed by the court each petition makes about the following case: Newman was a representative of Morris & Co., who were engaged in the business of packers and provisioners, and, as their representative, he remained in Americus about 10 days, and during that time was engaged in negotiations with reference to the transactions between them on the one hand, and Whitley and the Standard Grocery Company on the other. Whitley, as a broker, had for two or three years sold goods for Morris & Co. on commission; Morris & Co. shipping the goods to Whitley in car-load lots, to be sold by him to the Standard Grocery Company, which, as Newman and Morris & Co. well understood, was the only customer for the goods shipped to Whitley, and the goods so received by the Standard Grocery Company (which was a wholesale house) were sold to its customers. Newman, while in the city of Americus, had been negotiating with Whitley with a view of discontinuing the relationship which had previously existed between them, and had

checked up Whitley's account and received back all the goods on hand, and had the book which had been kept by Whitley showing the disposition of the goods of Morris & Co. The difference between what had been shipped and what had been returned was due by the Standard Grocery Company, and this fact was known to Newman; yet Newman demanded that Whitley should pay the difference in cash or return the goods. This claim of Newman was denied by Whitley, who claimed that the difference was due by the Standard Grocery Company. It is further alleged that, after this demand and refusal, Newman made several visits to see Mrs. Whitley (the plaintiff's wife), and asked her to pay the difference in the accounts as claimed by Newman; and, upon her refusal to pay the claim made by Newman, or to secure the balance claimed by Morris & Co., by giving a mortgage upon her house and lot, Newman made the statements to which we first referred.

The allegations in the second petition vary from the first only in asserting that the second alleged slander, which we have quoted, was made to the plaintiff himself in the presence of Kaehm. In both cases the plaintiff alleges that the language imputed to him the offense of larceny after trust, and impliedly conveyed this meaning to those who heard it, and that, when Newman said that the plaintiff was short, he meant that the plaintiff had, on demand, failed to account for or pay money with which he had been intrusted; and by innuendo it sought to explain that when Newman said he had another party arrested for being short, he intimated, and intended to impress upon those who heard him, that the plaintiff was guilty of larceny after trust, and might share the same fate as the party he referred to as having been put in jail. It is alleged that the charge made by Newman in the presence of Kaehm and of Mrs. Whitley is absolutely false, and that this was well known to Newman at the time that he uttered the slanderous and defamatory words. The petition did not allege that the language alleged to have been slanderous was maliciously uttered, but it did aver that the purpose of Newman in speaking the words was to force the plaintiff to secure a debt of the Standard Grocery Company and to obtain the consent of Mrs. Whitley to pledge her property as security for its payment; and that the utterances of Newman which have been quoted were, as he knew, untrue, and were not

made bona fide in the performance of any duty, nor with a bona fide intent to protect his own interest.

We do not think that the judge erred in dismissing the petitions. Of course, in any case of doubt as to the meaning of the words employed and as to whether they impute a crime, as well as when it is doubtful whether the facts alleged make the communication which is alleged to be slanderous a matter of privilege, these questions should be submitted to a jury. Nothing is better settled, however, than that the office of the innuendo is merely to explain any ambiguity in a statement alleged to have been made, and not to enlarge the scope and meaning of the statement. So far as the statement made to Mrs. Whitley is concerned, the latter portion of the conversation was evoked by questions which she asked Newman. Having an interest in him, as his wife, statements made in response to her questions, even if they imputed a crime, would be privileged. But let us consider the first statement made to Mrs. Whitley, and see if there can be any real doubt as to whether it imputed a crime. The defendant said to Mrs. Whitley that her husband was "short" with Morris & Co., and she had better give a mortgage to secure the amount, as she would have to pay it anyway. Taking the whole sentence together, it can not be said that, when Newman said that Whitley was "short" with Morris & Co., he necessarily meant thereby to charge that Whitley was guilty of the offense of larceny after trust, even if we treat the word "short" as meaning that he had retained and had not paid over money which he had agreed to pay to Morris & Co., because the statement that he was "short" was qualified by the further statement in the same sentence that Mrs. Whitley would have to pay the amount. If Newman meant by the word "short" to charge the crime of larceny after trust, his concept of that offense would necessarily have implied that the amount which Whitley was short had been demanded and Whitley had refused to pay it. In this event the crime would be complete, and Newman, in requesting Mrs. Whitley to secure the amount by a mortgage on her property, and stating that she would have to pay it, would himself be attempting to commit the offense of compounding a felony. But, where an act is subject to two constructions, the one involving guilt and the other not, the construction which points to innocence is to be preferred to that from which guilt may be inferred; and it must be presumed that Newman was trying to adjust

the matter with Mrs. Whitley before making such a formal demand as, if Whitley refused to pay the shortage, would render him liable to the provisions of the Penal Code (1910), § 189. So we do not think that the language of Newman, by a reasonable construction, can be said to impute a crime.

We bear in mind, of course, that when a crime is charged in a conversation, the descriptive averments by which the crime must be designated are not required to be stated with the distinctness necessary in an indictment. But, on the other hand, it is not enough that the party to whom the remark is addressed may jump to the conclusion, from the language used, that a crime is being imputed to the person to whom the speaker refers. The statement must not only be such as may possibly convey to the auditor the impression that the crime in question is being charged, but must be couched in such language as might reasonably be expected to convey that meaning to any one who happened to hear the utterance. The preliminary statements in the petition, in reference to the fact that Whitley was selling on commission, and that Newman, as agent for Morris & Co., was negotiating and trying to effect a settlement with Whitley, and that there was a balance due by Whitley, and that Whitley had refused to pay the amount, related to facts none of which, so far as appears from the petition, were known to Mrs. Whitley. It may be said that, as she was his wife, she naturally would know all of them. Whether, as a matter of fact, Mrs. Whitley knew that her husband had refused to pay over any money, upon demand, however, can not rest on such a presumption as that just referred to, because pleadings are to be construed most strictly against the pleader, and, from the omission to state in the petition that Mrs. Whitley did know these facts, it must be inferred that she did not. Taking into consideration the fact that Mrs. Whitley did not know that Newman had demanded payment of any money from her husband, as funds which he had illegally appropriated or used, the mere fact that there was a shortage in his accounts would not necessarily imply that he was charged with being guilty of any crime. Furthermore, the allegations in the petition which precede and lead up to the recital of the language said to have been used by Newman to Mrs. Whitley did not necessarily require the conclusion that Newman was entitled to demand any money from Whitley, or, if so, how much. The

mere fact that Whitley was a salesman or Morris & Co. and authorized to make sales to the Standard Grocery Company would not imply that he had the right to collect, even though he sold on commission; for, in the absence of an express stipulation to that effect, an agent to sell does not ordinarily have the power to collect. The power to collect is not a necessary incident of the power to sell. While, according to the statement of the petition, it may be that Whitley received a commission for selling, dependent upon those customers who paid, still it is not to be inferred from the petition that Whitley had the right to collect. The petition does not state that he had such a right, or that he had exercised it. The allegations upon this point are to the effect that Whitley had only one customer, and that he delivered the goods to the Standard Grocery Company; but there is no allegation that he collected any money or was authorized to collect any. We think the allegations insufficient to impute a crime.

Even if the alleged statement to Mrs. Whitley imputed a crime, however, we think that, under the circumstances which we have detailed, it was privileged, because it was elicited by one who had an interest in the answer, and therefore, if not made to any one else, it would not be slanderous. In the next place, the utterance was not slanderous (and would not have been so even if Newman in answer to her questions and in a proper way had told Mrs. Whitley that her husband had stolen $500 of his employer's money), for the reason (as stated in the petition) that Newman was trying to effect a settlement and to secure or collect money which he in good faith believed was due to his employers, and the statement was made to try to secure their debt. Under the circumstances, the statement made by Newman was made in his own interest, and for that reason was privileged.

What has been said as to the case which was based upon alleged slanderous words used by Newman to Mrs. Whitley will apply also to the action based upon language said to have been used by Newman to Whitley himself in the presence of Kaehm; for, as already stated, there is no difference in the two petitions except the difference in the words employed and the persons in whose presence they were uttered. The case in which it was alleged that Newman, in the presence of Kaehm, imputed to Whitley the crime of larceny after trust, can be treated within a very small compass, because in

addition to the fact that, as in the other case, there is no allegation of special damage or that a demand for payment had been refused (which would have been necessary to complete the offense), it is clear to our minds that the language used by Newman in Kaehm's presence does not charge the offense of larceny after trust. According to the petition, Newman and Whitley were discussing Whitley's dealings with Morris & Co. Newman claimed that Whitley was short in his accounts. The exact language used by Newman was: "I have just had a conversation over the phone with a party in South Georgia, where he was short with us just like you are. He refused to do anything, and we had him arrested and put in jail. His father is now trying to sell his property at a sacrifice to get him out. I hope this will not be the case with you." As we understand it, the word "short" is a phrase of the stock and produce exchanges (In re Taylor & Co.'s Estate, 192 Pa. 304 (43 Atl. 973, 73 Am. St. R. 812)), and in the parlance of the exchange, as in its popular signification, is the opposite of "long." In the vernacular of the exchange, to say that one was "long on cotton" would mean he had too much cotton; and to say that he was "short on cotton" would mean that he had too little cotton. Unless Newman used the word "short" in this sense, it is plain from the context that his language would have no significance as related to the dealings between the parties; of course, the length of Mr. Whitley's body did not enter their thoughts. So that the most Newman could have meant by saying that the party in South Georgia was "short" was that Whitley either had on hand less of Morris & Co.'s goods, or less of their money, than he should have, to complete their settlement and discontinue their business.

In *Parker* v. *Barlow,* 93 *Ga.* 700 (21 S. E. 213), it was said that "shortage" is any deficiency in the quantity warranted. It is plain that this is all that Newman meant, for in speaking of the young man in South Georgia he says, "He was short with us just like you are," and continuing, "He refused to do anything, and we had him arrested and put in jail." It is plain that, according to Newman's statement, they did not have the young man in South Georgia arrested and put in jail until he refused to do anything; in other words, until there was a demand and refusal to account for the money or other property with which the nameless young man had been intrusted. Newman did not say that Whit-

ley's case was like that of the young man except in one respect; that is, they were alike "short" According to his statement, the young man might have been guilty of larceny after trust because he refused to do anything: but, so far from charging that Whitley was guilty of larceny after trust, Newman said, "I hope this will not be the case with you." In view of the absence of any express allegation of malice, and construing the pleadings as a whole (as we must) most strongly against the pleader, it is clear to our minds, regardless of any other points raised in this case, that the words alleged to be slanderous are not sufficient to charge Whitley with the offense of larceny after trust. As already pointed out, an innuendo can neither enlarge nor restrict the scope and meaning of the words of which it is explanatory. *Park* v. *Piedmont & A. L. Insurance Co.,* 51 *Ga.* 510: *Giddens* v. *Mirk,* 4 *Ga.* 364: *Smith* v. *Wright,* 55 *Ga.* 218: *Morgan* v. *Black,* 132 *Ga.* 67 (63 S. E. 821).

In our view of the case, Newman's statement that Whitley was "short," but that he hoped he would not commit the offense of larceny after trust by refusing to do anything, of ·course, did not impute to Whitley the crime of larceny after trust; and therefore it is not necessary to consider, as we have done in the case concerning the language used to Whitley's wife, the other questions raised by the plaintiff in error. The broadest intimation contained in Newman's language is that Whitley might be intending to commit the offense of larceny after trust, or was disposed to commit it; but this would not suffice to maintain an action of slander. Oral defamation is generally more strictly construed than is libel, and yet even "written words imputing a criminal disposition to another are not libelous per se." "Spoken words charging merely an intention or disposition to commit crime in the future are not actionable, since such intent constitutes no crime." 25 Cyc. 277: McKee *v.* Ingalls, 5 Ill. 30. See also Stees *v.* Kemble, 27 Pa. 112; Fanning *v.* Chace, 17 R. I. 388 (22 Atl. 275, 13 L. R. A. 134, 33 Am. St. R. 878) ; Dickey *v.* Andros, 32 Vt. 55. In the cases last cited, it was held not to be slander per se to say of another that he is going to start a house of ill fame, since the words only charge an intention to commit the offense.　　　　　　　*Judgment affirmed.*