PATTON *v.* JACOBS ET AL.

[No. 17,649. Filed April 22, 1948. Rehearing denied May 14, 1948. Transfer denied June 10, 1948.]

*Earl J. Wynn,* of Indianapolis, attorney for appellant.

*Byron Emswiller, Albert Stump, and Owen S. Boling,* all of Indianapolis, attorneys for appellees.

CRUMPACKER, J.—This is an action to recover damages resulting from the appellees' alleged invasion of the appellant's right to privacy. The appellees filed separate demurrers to the complaint, both of which were sustained, and, upon the appellant's refusal to plead over, the court entered judgment for the appellees from which this appeal is taken.

In substance the complaint alleges that the appellee Harry A. Jacobs is a practicing doctor of medicine in Indianapolis, Indiana, and that he employed the appellee, Medical and Dental Business Bureau, Inc., to collect a bill for professional services rendered by him to the appellant, the payment of which he asserted was long past due. That in its efforts to collect this account and with the purpose of coercing the appellant into paying the same said Bureau wrote two letters to the Veterans Administration of the United States Government in Marion County, Indiana, by whom she is employed as a telephone operator. Omitting caption and signature the first of these letters is as follows:

"If we have been correctly informed, you have an employee by the name of *Mrs. Frances F. Patton* (Tele. Opr.) who is indebted *to Dr. Harry A. Jacobs* in the amount of $65.00.

"In this event, will you ask *him* to contact us at once in reference to the above account which we have for liquidation. Anything you can do to assist us to collect this bill will be greatly appreciated."

That this letter was followed by another about a week later which, also omitting caption and signature, is in the following words:

"Thanks for your letter of January 11th, regarding the above subject.

"If Mrs. Patton received notices of indebtedness of varied amounts it was probably due to the addition of service rendered after the previous statements were sent out. Of course there is always the possibility of a clerical error.

"We are sending you a copy of the itemized statement covering a period of five (5) years of service.

"You can see that she did not consistently pay each time service was rendered and the accumulation of unpaid visits might have been greater than she realized.

"We are also sending you a letter from Dr. Jacobs concerning the handling of this account.

"Since Mrs. Patton has stated she welcomes a law suit Dr. Jacobs is willing to accommodate her. The itemized statement is a true statement of the account and will be entered as exhibit 'A' if legal action is necessary.

"We will appreciate it if you discuss this matter again with Mrs. Patton and anything you may do to persuade her to liquidate this indebtedness."

Enclosed with this second letter was an itemized statement of the account in controversy showing a balance due of $65 together with a letter from Harry A. Jacobs addressed "To Whom it May Concern" and which, omitting signature, reads as follows:

"I have made every legitimate effort to collect the account of Mrs. Frances Patton. I have sent innumerable statements and the only response we ever had was when Mrs. Patton called my secretary and asked her to inform me that she would not pay her bill through the Medical and Dental Business Bureau. My secretary told her to come

in to the office where she could see the itemized account and discuss it and she seemed satisfied with this arrangement. On the basis of her not coming in, after waiting several months, I have turned the account over to the Medical and Dental Business Bureau for collection. I have always given Mrs. Patton the best treatment I knew how and treated her courteously and have never had any inkling that she was not satisfied with her treatment nor that she did not intend to pay for it. She makes the contention that she had sent me several patients, and I may say in return that on the basis of my friendship to her I have made every effort to make my charges as reasonable as possible. There is, to my notion, no reason whatsoever why this account should not be paid."

The complaint further alleges that said letters were sent by the appellees to the appellant's employer with intent to expose her to public contempt and ridicule and to cause an evil opinion of her in the mind of her employer and the public generally as a person devoid of integrity and a sense of fair dealing. That said letters were read by numerous and divers employees and executive officers of her said employer and as a direct and proximate result of such invasion of her right of privacy she suffered and continues to suffer great mental pain, anguish and humiliation and has become ill and sick from worry and anxiety concerning the injury to her good name, all to her damage in the sum of $3,000.

The appellees profess some confusion as to whether this complaint seeks damages for an alleged libel in the publication of the letters involved or because they operated to invade her right of privacy and therefore they demurred for want of sufficient facts to constitute a cause of action on either theory. As a complaint for damages resulting from libel it is clearly insufficient. The words complained of are not

libelous *per se* and there is no allegation of special damages. The general rule is expressed thus in 33 Am. Jur., Libel and Slander, § 60:

> "As respects a charge of failure to pay debts, without imputation of insolvency, it seems to be settled that a writing containing the mere statement that a person who is not a trader or merchant, or engaged in any vocation wherein credit is necessary for the proper and effectual conduct of his business, owes a debt and refuses to pay, or owes a debt which is long past due, is not libelous *per se* and does not render the author or publisher of such statement liable without proof of special damages." See cases cited under footnote 12, 33 Am. Jur., Libel and Slander, § 60. Also Anno: 42 L.R.A.(N.S.) 515.

It seems clear to us however that the appellant is not complaining of a libel but rather of an invasion of her right to privacy through the conduct of the appellees in giving unwarranted publicity to her failure to pay a debt and thereby coerce her into liquidating the same. Whether or not her complaint is good upon such a theory presents a more difficult question. The Supreme Court of Oregon, in discussing the right of privacy, recently said:

> "Where this right has been invaded, as for example, by using the name or photograph of a person without his authority, for advertising or commercial purposes, or by parading a person's intimate, private affairs before the public gaze, unjustifiably and against his will, some of the courts of this country have thought that no legal redress could be granted, largely because the right was unknown to the common law, and to recognize it would be judicial legislation. No one, however, has had the hardihood to excuse as ethically or morally defensible practices which, becoming increasingly common and in many instances more and more offensive and injurious, under modern

social conditions and through the use of modern scientific inventions, give sharper point to the demand that in such cases courts discharge the function for which they exist, of administering justice and affording redress for wrongs committed." *Hinish* v. *Meier & F. Co.*, (Ore.) 113 P. 2d 438, 138 A.L.R. 1.

The doctrine, as a basis for injunctive relief in equity, has been recognized by the Supreme Court of this state in an able and exhaustive opinion by Richman, J., in *State ex rel. Mavity* v. *Tyndall* (1946), 224 Ind. 364, 66 N. E. 2d 755. On the other hand we find no case in Indiana which announces the right of privacy as a distinctive legal right the violation of which will support an action at law for damages. However a right that is protectable in a court of equity against threatened invasion is certainly broad enough to warrant an action at law for injuries resulting from a consummated violation thereof. We therefore consider the appellant's complaint to be sound in theory at least and supported by logic and the weight of authority elsewhere. See Anno, 138 A.L.R. 22.

There are comparatively few decisions anywhere, and none in Indiana, in which one's right of privacy has been held to have been invaded by an attempt of a creditor to collect a debt. As Judge Richman said in *State* v. *Tyndall, supra,* most of the law on this subject "was developed as the result of intrusion for news or commercial purposes into the private affairs of the complainant" but there seems to be no logical reason why a creditor's determination to collect an account could not lead him into a course of conduct that would constitute a violation of his debtor's right of privacy. The cases on this phase of

the subject are collected and reviewed in the note appearing at 138 A.L.R. 22, *supra,* and our extended comment on the facts and holdings of those decisions would serve no useful purpose. We think it sufficient· to say that in most of the cases in which a recovery was permitted the actionable conduct of the creditor lay in the fact that he gave the general public information concerning a private matter in which it had, or could have, no legitimate interest, and did so in a manner that was coercive and oppressive. Frequently, except for the truth of the publication, the words and methods used would have given basis for a suit for libel or slander and carried to the public generally the inference that the complainant was a "dead beat," habitually refused to pay his debts and was not entitled to financial credit.

We find none of these elements in the case before us. If the appellant's complaint pleads a case for the invasion of her right of privacy it lies solely in the fact that the appellees, in an effort to collect a bill, brought the matter to the attention of the appellant's employer through a series of letters in which the employer's aid was solicited and the facts and circumstances of the indebtedness were detailed and in the further fact that in the course of routing said letters to the employer's appropriate executive officer, the same were read by numerous clerks or other office employees. It must be borne in mind that an employer has a natural and proper interest in the facts relative to debts owed by his employees. He is subject to the expense and inconvenience of defending himself in garnishee proceedings wherein a percentage of his employees' wages may be taken to apply on such debts and thus additional and burdensome bookkeeping entries may be imposed upon him. He has the right to

hire only those who pay their debts and may take a pardonable pride in the reputation of his employees in that respect. He is not in a category with the general public which cannot have any legitimate interest in a purely private matter between a creditor and a debtor. For the reasons above stated an employer has a right to know the status of the financial obligations of his employees and, while we cannot say that a creditor of an employee owes the employer a duty in that regard, it is difficult to follow a course of reasoning that concludes that the employee's right of privacy has been invaded by giving his employer information which the employer has a right to have. In other words an employee has no right of privacy as against his employer in the matter of the debts he owes and a creditor who gives such information to the employer, unaccompanied by slanderous, libelous, defamatory or coercive matter, incurs no liability in so doing. The fact that in the usual course of business the communication may pass through the hands of clerks or stenographers, whether in the employ of the writer or the addressee, does not alter the rule. The situation is somewhat analogous to that of a privileged communication which does not lose its character through such process. 34 Am. Jur., Libel and Slander, § 189, Notes 1 and 2.

If a debtor is to have a cause of action for the violation of his right of privacy merely because his creditor informs his employer of the facts concerning a valid debt in the hope that such action may facilitate or even coerce its payment, we consider it more fitting that such right be created and defined by the legislature rather than by a judicial decision for which we can find no clear and satisfactory precedent.

Judgment affirmed.

NOTE.—Reported in 78 N. E. 2d 789.