36672. GOULDMAN-TABER PONTIAC, INC. *v.* ZERBST.

DECIDED MAY 20, 1957—REHEARING DENIED JUNE 12, 1957.

*Hurt, Gaines, Baird, Peek & Peabody,* for plaintiff in error.

*J. William Gibson, Moise, Post & Gardner,* for parties at interest not parties to record.

*Dennis F. Jones,* contra.

GARDNER, P. J.   1.   We will discuss the contentions of the defendant first. While the letter of the defendant to the Lockheed Aircraft Corporation is set out as an exhibit to the petition and quoted hereinabove, the record shows no answer to that letter from the Lockheed Aircraft Corporation to the defendant. In the brief of counsel for the defendant this admission was made regarding the answer of the Lockheed Aircraft Corporation, counsel stating that the letter was dated April 27, 1956:

"Gentlemen:

We have notified the above named employee of his account with you. He has been asked to make arrangements with you immediately to satisfy the account.

We request that any further correspondence be directed to this employee at his home address on file at your office.

> "Very truly yours,
> Lockheed Aircraft Corporation
> Georgia Division.
> /s/ W. Van Elmendorf
> Employee Service.
> By: W. L. H."

Counsel for the defendant calls our attention to *Davis* v. *General Finance &c. Corp.,* 80 *Ga. App.* 708 (57 S. E. 2d 225). The facts in that case are so dissimilar to those in the instant case that they are not comparable at all. In that case the creditor sent a telegram directly to the debtor stating that unless the account was paid legal action would be taken. In that case the creditor did not communicate with the employer as was done in

the instant case. Our attention is called to *Pavesich* v. *New England Life Ins. Co.*, 122 *Ga.* 190 (50 S. E. 68, 69 L. R. A. 101, 106 Am. St. R. 104, 2 Ann. Cas. 561). Counsel for the defendant, regarding that case has this to say: "Since this decision many States have followed the principles laid down in Justice Cobb's well considered opinion which has been a landmark in the general recognition of the right of privacy."

Counsel for the defendant call our attention to Patton *v.* Jacobs, 118 Ind. App. 358 (78 N. E. 2d 789) to the effect that in order to be actionable, communications of the creditor concerning private matters must be given to the general public. We do not understand this to be the law of Georgia, as discussed hereinafter.

Counsel for the defendant call our attention to *Estes* v. *Sterchi Brothers Stores*, 50 *Ga. App.* 619 (179 S. E. 222). This suit was brought for libel, and the court held that the statement made was not libelous per se and further that no special damages were alleged. One or the other must be shown in order to recover in a suit for libel.

2. Counsel for the plaintiff cites *McDaniel* v. *Atlanta Coca-Cola Bottling Co.*, 60 *Ga. App.* 92 (2 S. E. 2d 810) wherein it was held that there is nothing in the decided cases of this State which indicates that publication or commercialization of information obtained is necessary in order to make an action maintainable for invasion of privacy. We might state in this connection, since we have cited decisions from other States on behalf of the defendant, that the courts of the State of Louisiana are in accord with the courts of Georgia regarding invasion of the privacy of an individual. See Quina *v.* Roberts (La. App.) 16 So. 2d 558. In conclusion of this subdivision of this opinion we again refer to *Pavesich* v. *New England Life Ins Co.*, 122 *Ga.* 190, supra. In that case the Supreme Court, speaking through Justice Cobb, set forth the law for restricting invasion of the privacy of another. We quote from pp. 195 and 196 of that opinion as follows: "When the law guarantees to one the right to the enjoyment of his life, it gives to him something more than the mere right to breathe and exist. While of course the most flagrant violation of this right would be deprivation of life, yet life itself may be spared and the enjoyment of life entirely destroyed. An individual has a right

to enjoy life in any way that may be most agreeable and pleasant to him, according to his temperament and nature, provided that in such enjoyment he does not invade the rights of his neighbor or violate public law or policy. The right of personal security is not fully accorded by allowing an individual to go through life in possession of all of his members and his body unmarred; nor is his right to personal liberty fully accorded by merely allowing him to remain out of jail or free from other physical restraints. The liberty which he derives from natural law, and which is recognized by municipal law, embraces far more than freedom from physical restraint. The term *liberty* is not to be so dwarfed, 'but is deemed to embrace the right of a man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare. Liberty, in its broad sense, as understood in this country, means the right, not only of freedom from servitude, imprisonment, or restraint, but the right of one to use his faculties in all lawful ways, to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation.' See Brannon on Fourteenth Amendment, 111. Liberty includes the right to live as one will, so long as that will does not interfere with the rights of another or of the public. One may desire to live a life of seclusion; another may desire to live a life of publicity; still another may wish to live a life of privacy as to certain matters and of publicity as to others. One may wish to live a life of toil where his work is of a nature that keeps him constantly before the public gaze; while another may wish to live a life of research and contemplation, only moving before the public at such times and under such circumstances as may be necessary to his actual existence. Each is entitled to a liberty of choice as to his manner of life, and neither an individual nor the public has a right to arbitrarily take away from him his liberty."

Closing this subparagraph it is our opinion that the act of the defendant in writing the employer to assist in collecting a debt which the employee allegedly owed, and to force her to pay a debt which she claims she did not owe and for which the defendant had no judgment against the plaintiff and had entered no

suit against the plaintiff, was an invasion of the employee's privacy.

Counsel for the plaintiff contends that the petition sets out a cause of action on the theory that damages accrued under Code § 105-103. That Code section reads: "When the law requires one to do an act for the benefit of another, or to forbear the doing of that which may injure another, though no action be given in express terms, upon the accrual of damage the injured party may recover." See in this connection *Goodyear Tire & Rubber Co.* v. *Vandergriff*, 52 *Ga. App.* 662 (184 S. E. 452).

In view of the facts alleged in the petition in the instant case, and the authorities which we have set out hereinabove, the court properly overruled the defendant's demurrers, both general and special.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*

*On rehearing Carlisle, J., concurs. Townsend, J., concurs specially.*

Townsend, J., concurring specially on rehearing. In view of the very strong motion to rehear in this case, the writer has again examined the authorities for and against the maintenance of such an action, and is still of the opinion that, although the majority of decisions in other States are to the contrary, the spirit and intent of Georgia law on the subject of the right to sue in tort for an invasion of the right of privacy is sufficiently broad to cover a case such as is made here. I do not think this rule of law should be given lip service only. Coercive action which tends to limit the free choice of an individual in resisting what he feels to be an unjust claim for money upon him is reprehensible, and there have been many times in this State where employment was so scarce that to threaten an employee with discharge was equivalent to threatening him with starvation. The only reason a creditor or a collection agency acting as its agent can have for contacting an employer in regard to an alleged debt of the employee is that the creditor hopes by such means to enlist pressure in his behalf against such employee. It is well known that many employers have a policy, in order to protect themselves from the trouble incident to a garnishment proceeding, of discharging employees whose wages are garnished. Others may go farther, and

command the debt to be paid on pain of dismissal. Such pressures tend to prevent alleged debtors from having their defenses tried out in a court of law, the purpose and function of which is to protect against unjust claims. Until the issue is tried out, this court cannot say whether the claim is just or unjust. The debtor, under the decision in *Whitley* v. *Newman*, 9 *Ga. App.* 89 (70 S. E. 686) has no recourse under the libel laws because under these statutes "statements made in good faith to effect a collection of an indebtedness justly due are privileged."

Code § 105-103 provides: "When the law requires one to do an act for the benefit of another, or to forbear the doing of that which may injure another, though no action be given in express terms, upon the accrual of damage the injured party may recover." Code § 3-105 provides: "For every right there shall be a remedy, and every court having jurisdiction of the one may, if necessary, frame the other." I see a vast distinction between this case and that of *Davis* v. *General Finance & Thrift Corp.*, 80 *Ga. App.* 708 (57 S. E. 2d 225), in that the communication there was directly to the debtor from the creditor via telegram, and "a publication to a few employees of a telegraph company who are not alleged to be acquainted with the alleged injured party would not offend the sensibilities of a person who has gone into debt and subjected himself to the standard communications of a civilized society." Employees of a corporation dealing only in means of communication, not alleged to be in a position to exert pressure on the debtor, are not primarily concerned and in the proper exercise of their duties should not be influenced by communications to others passing through their hands. An employer, appealed to directly for the purpose of getting him to exercise pressure, and who is capable of exercising pressure, on an employee, is intended to be and in the natural course of events often will be influenced by such communication. Therein lies the difference. That the statement is not libelous will not prevent it from being tortious if it in fact constitutes an invasion of the rights of the person concerned, the debtor. As against demurrer, this fact affirmatively appears, and the petition therefore sets forth a cause of action. The amount of damages claimed is not the subject of consideration here as there is no demurrer on that ground, but

it might be well to point out that as to damages the rule stated in the *Davis* case, supra, would apply, to the effect that "the alleged violation must be tested on the basis of the innocence and good faith of the actor and the truth of the communication or publication."