A94A1549. ZIELINSKI v. CLOROX COMPANY et al.
(450 SE2d 222)

BIRDSONG, Presiding Judge.

Appellant Gary Zielinski sued his former employer Clorox Company, its distribution manager Lora Cecere and plant manager William Castleberry for defamation and invasion of privacy, all arising out of termination of his employment for suspicion of theft and false accusations publicly made against him.

After the alleged defamation, it was found by Clorox executives that Zielinski was not involved in the theft; a worker under his supervision had devised the theft scheme and Zielinski did not discover it.

Appellant Zielinski had been distribution manager but was replaced by appellee Cecere. Soon after, a new clerk discovered a suspect purchase order for pallets and a scheme was discovered involving large payments made by Clorox to a post office box for pallets which were never received. Zielinski had initialed the invoices. During an audit, Zielinski was interviewed. On July 15, 1990, he was suspended with pay, and appellee Castleberry called an all-plant meeting and announced to all employees the suspension of Zielinski and of Cornelius Butts, who had worked under Zielinski's supervision. A former plant accountant affied that he attended the all-plant meeting "wherein William Castleberry announced that illegal pallet activity . . . had been discovered. It was announced that [Butts] and Gary Zielinski had been suspended for being involved. Mr. Castleberry said they were conducting further investigations and that the employees would be kept informed. . . . I believed, from what I had heard, that Gary Zielinski was involved. I also heard other employees talking as they filed out of the [meeting and saying that Zielinski] must have been involved for Mr. Castleberry to make such an announcement. Although Mr. Castleberry told the employees . . . that they would be

kept informed, nothing else was ever communicated to all employees, to my knowledge, other than the announcement on the bulletin board that Gary Zielinski had been terminated." At this meeting Castleberry also announced that the matter was being turned over to the Clayton County District Attorney's office.

According to Castleberry's affidavit, "the purpose of the all-plant meeting was to quell any false implications or rumors." Zielinski was terminated on August 15, 1990, and the crimes were reported to the district attorney; Castleberry also had meetings with managers and supervisors and discussed the investigation of Zielinski's suspension. Castleberry affied that "the purpose of the meetings was to advise those who had reason to know of the events in the plant."

According to Castleberry, Zielinski was terminated for "neglect of duty . . . [failing] to have proper handling procedures in place to prevent or detect the pallet theft." Zielinski contends the record shows that while at Clorox, he received good evaluations, that the illegal pallet activity went on five years before he was made manager of distribution but none of his predecessors was questioned by Clorox, and that Castleberry's own job was in jeopardy when Zielinski was accused of theft and fraud. According to Zielinski, no evidence was ever found that he was involved in theft or fraud.

The trial court granted defendants' motion for summary judgment in part and denied it in part. Appellees did not respond to each of appellant's enumerations but only responded generally. *Held*:

1. The trial court correctly held that the statements made prior to August 15, 1990, including the statements made at the all-plant meeting, were not actionable as defamation, as this suit was not filed until August 15, 1991. OCGA § 9-3-33. However, these statements may be admissible to explain the underlying circumstances and defamatory nature of the announcement of termination on August 15, 1990.

According to the evidence construed in Zielinski's favor (see *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474)), the statements made at the all-plant meeting were made to employees who were without a duty or responsibility which required them to know of it. *Walter v. Davidson*, 214 Ga. 187 (2), 191-192 (104 SE2d 113); *Madden-Lee v. Day's Inns of America*, 184 Ga. App. 485, 486 (361 SE2d 714); *Land v. Delta Airlines*, 147 Ga. App. 738 (2) (250 SE2d 188); *Garrett v. Lockheed Aircraft Corp.*, 98 Ga. App. 443 (106 SE2d 333); OCGA § 51-5-7. The statement in *Kurtz v. Williams*, 188 Ga. App. 14, 15 (371 SE2d 878) as to "intra-corporate communications" refers only to communications to persons who because of their *duty or authority* "[have] reason to receive the information." Id. Statements made to employees who are without a duty and authority to control or have knowledge of the plaintiff's conduct are not privileged. *Wal-*

*ter,* supra; *Melton v. Bow,* 145 Ga. App. 272 (2) (243 SE2d 590).

2. As to consideration of surrounding circumstances of a publication to determine whether it was defamatory, see *Montgomery v. Pacific & Southern Co.,* 131 Ga. App. 712, 715 (206 SE2d 631). The import of an alleged defamatory statement may be gathered not only from words themselves but from circumstances under which they are published (*Burrow v. K-Mart Corp.,* 166 Ga. App. 284, 285-286 (304 SE2d 460)), but the trial court correctly held that the bald announcement of Zielinski's termination carried no defamatory implication. See *Yandle v. Mitchell Motors,* 199 Ga. App. 211, 212 (404 SE2d 313).

In *Yandle,* a notation that Yandle's " 'lack of sales effort result[ed] in low production' " was read to prospective employers. Yandle contended the statement was incomplete because it omitted the explanation that his child's illness was the reason for his lack of sales success. Id. at 211. The statement contained a criticism of Yandle's performance which he acknowledged was the literal truth, but it was not the whole truth. In this case, the alleged defamation is the posting of the termination notice which contained no criticism of Zielinski and which was obviously true; nevertheless, he says it was defamatory in light of the earlier announced suspicions of theft leading to his suspension and investigation.

Judging the evidence in favor of respondent Zielinski on defendants' motion for summary judgment (*Lau's Corp. v. Haskins,* supra), the termination notice on its face contained no criticism of him. Even if it confirmed the suspicions earlier reported by Castleberry at the all-plant meeting, the law of "innuendo" does not permit the enlargement of this single true, unambiguously noncritical statement into defamation on the grounds of other rumors or suspicions others may have received. "The office of an innuendo is merely to explain the ambiguity, where the precise meaning of terms employed in an alleged [defamatory] statement may require elucidation." *Whitley v. Newman,* 9 Ga. App. 89, hn. 2 (70 SE 686), cited in *Yandle,* supra. The published statement about Yandle was true and unambiguous; and therefore could not be enlarged by "innuendo" merely because it was a criticism of him which he alleged was not the whole truth. The mere notice of Zielinski's termination is even less susceptible to enlargement to defamation by innuendo than was the statement in *Yandle.* The "meaning of terms employed" in it (*Whitley,* supra) did not need elucidation. It was unambiguous and it was true. The defendants may have had a moral duty to explain it in the underlying circumstances, but their failure to do so "was not a breach of a legal duty which exposed it to liability for defamation." *Yandle,* supra at 212. An employee's associates may speculate, based on some prior information, as to the reasons behind every termination notice and they

often will be wildly incorrect; generally, it would be unfair and would place an onerous burden on employers and co-workers to enlarge a simple termination notice into defamation on the basis of a prior rumor or defamatory remarks. The ruling of the trial court that the termination notice, being unambiguous and literally true, was not susceptible to enlargement by the "law of innuendo" was correct. *Yandle*, supra; *Whitley*, supra.

3. (a) The trial court held that as to any defamatory statements made by Cecere to outside vendors, an unsigned statement of one vendor (Wilhelm) that defamatory remarks were made to him by Cecere after Zielinski's termination on August 15, 1990, cannot overcome the vendor's sworn affidavit to the opposite effect. For its ruling the trial court cited *Bethea v. Kennedy*, 176 Ga. App. 328 (1) (335 SE2d 732), which cites *Raley v. Mayor &c. of Warrenton*, 120 Ga. 365, 368 (47 SE 972) and *State v. Barnett*, 136 Ga. App. 122, 123 (220 SE2d 730). The trial court erred in this ruling. We do not know what was in the "unsigned document purporting to be the affidavit" in *Bethea*; it was simply held *"[t]his* document is technically deficient and thereby presents no facts in opposition to the plaintiff['s] motion for summary judgment." (Emphasis supplied.) Id. at 328-329. That statement does not amount to a holding that an unsigned statement purporting to be an affidavit presents no facts in opposition to a motion for summary judgment. *Raley* did not hold that an unsworn statement is technically deficient and presents no facts in opposition to a sworn affidavit; it merely held that the signature of the affiant is necessary to validate an affidavit. *State v. Barnett* did not hold that an unsworn statement purporting to be an affidavit is technically deficient and presents no facts in opposition to a motion for summary judgment. If an unsworn statement were incompetent to contradict sworn testimony, there would be no such thing as perjury. The truth of the sworn affidavit is a question of fact for the jury, and any inconsistent statement or other evidence going to its verity may be considered by the jury to determine its truth and weight. Such inconsistencies are construed favorably to a respondent to a motion for summary judgment and where there is an apparent inconsistency in any person's testimony and statements, the matter should be submitted to the jury. *J. C. Penney Cas. Ins. Co. v. Williams*, 149 Ga. App. 258, 261 (253 SE2d 878).

However, appellee Cecere did not respond to appellant's arguments concerning the "unsigned affidavit," and the trial court's order refers to the document as a "sworn affidavit" of Mark Wilhelm. All this is misleading, because in fact the paper is not Mark Wilhelm's affidavit at all. It is a paper purporting to impeach Mark Wilhelm's deposition, and it was prepared by appellant, who unsuccessfully tried to get Wilhelm to sign it. The trial court's holding and appel-

lant's arguments concerning the admissibility of unsworn affidavits are therefore off-point. The paper is insufficient to impeach Wilhelm's deposition testimony, not because it is "unsworn," but because it is not Wilhelm's statement. There is no issue of fact as to whether any libelous statements were made to the vendor Wilhelm by Cecere.

(b) As to the allegations that Cecere made defamatory remarks to another vendor (Perry Carter), the trial court held that in her bare statement, "Yes, Perry, he was terminated," Cecere made no implication that Zielinski committed a crime. The trial court was correct for the reasons given in Division 2. Although the statement was made in response to Carter's remarks that he had heard rumors about Zielinski and theft, the statement itself was unambiguous and true. *Yandle*, supra; *Whitley*, supra. It may be that in some circumstances a plain, unambiguous statement of fact might be enlarged by the speaker's own innuendo, but any defamatory suggestion was made by vendor Carter. Cecere merely responded with fact. In some cases even dead silence may be inferred by a listener to be damning, but that alone does not make the response defamatory. As Cecere's replies were true and unambiguous, they could not be enlarged by innuendo in the circumstances of this case. *Yandle*, supra.

(c) Cecere allegedly also told Carter that Zielinski had been arrested. The trial court did not rule whether this statement was true, or was defamation, or was barred by the statute of limitation. Appellees make no response to appellant's appellate arguments on this claim. An issue of fact remains whether this allegedly untrue statement was defamatory, and on this point, the trial court erred in granting summary judgment to Cecere.

4. The statements made by appellees to the district attorney's office are privileged if made in good faith. OCGA § 51-5-7; *Fly v. Kroger Co.*, 209 Ga. App. 75, 78 (432 SE2d 664). Although after this suit was filed, Castleberry testified that he always believed Zielinski was innocent, there is evidence that Castleberry's own job was in jeopardy because of the thefts and he had made statements that he did not intend to take the blame, his "belief" and possible "suspicions" are not the same thing, and there is nothing wrong in not wanting to take the blame for what he did not do. Castleberry had a duty to assist in the investigation in good faith. This included revealing any possible suspicions even if he personally "believed" they would be proved untrue, and even if his own job was in jeopardy.

The trial court did not err in holding that no issue of bad faith arises as to Cecere merely because she testified she doubted whether Zielinski was involved in the thefts but failed to express such doubts to the district attorney. Cecere's personal belief as to Zielinski's innocence does not prevent her from stating any suspicions to the district attorney. Her personal belief does not remove her duty to cooperate

with law enforcement officers to investigate the thefts and does not destroy her privilege.

5. As to the alleged defamation by Castleberry at weekly "team leader" meetings after Zielinski was terminated, no question of fact exists whether the continued implications by Castleberry that Zielinski was involved in the pallet scheme were published to persons who had no duty or authority with respect to the matter, and therefore had no reason to receive the information. See Division 1, infra and cases cited herein. There is evidence that the "team leaders" met as a group to consider all business which might affect productivity and morale in their respective "teams" and that it was their duty to coordinate their efforts.

Likewise the trial court did not err in holding that Castleberry and Cecere did not invade Zielinski's privacy by placing him in a "false light" during the team leader meetings, as the thefts and Zielinski's possible role in them was a pertinent subject of those meetings. See *Thomason v. Times Journal*, 190 Ga. App. 601, 604 (379 SE2d 551); *Cabaniss v. Hipsley*, 114 Ga. App. 367 (151 SE2d 496).

As to their statements to the district attorney's office, appellant cites no authority that a cause of action for being placed in a "false light" with the district attorney's office survives the privilege in OCGA § 51-5-7, and such claim is deemed abandoned. Court of Appeals Rule 15 (c) (2).

*Judgment affirmed in part and reversed in part. Blackburn and Ruffin, JJ., concur.*

DECIDED SEPTEMBER 28, 1994 —
RECONSIDERATIONS DENIED NOVEMBER 2, 1994 —

*Vincent R. Lauria, Murray Z. Kahn, James A. Burgess, Jr.,* for appellant.

*Arrington & Hollowell, W. Ray Persons, Gary W. Diamond,* for appellees.