A95A1210. HARTSFIELD v. UNION CITY CHRYSLER-
PLYMOUTH et al.
(463 SE2d 713)

BLACKBURN, Judge.
Jo Anne Hartsfield appeals the trial court's dismissal of her complaint against a car dealership and its salesmen for failure to state a claim. Hartsfield was suing the defendants for fraud and malicious prosecution.

"When the sufficiency of the complaint is questioned by a motion to dismiss for failure to state a claim for which relief may be granted, the rules require that it be construed in the light most favorable to the plaintiff with all doubts resolved in his favor even though unfavorable constructions are possible. Not unless the allegations of the complaint disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts should the complaint be dismissed." (Punctuation omitted.) *Morgan v. Ga. Vitrified Brick &c. Co.*, 196 Ga. App. 779, 780 (397 SE2d 49) (1990).

The facts, in the light most favorable to Hartsfield, are that on June 30, 1992, Hartsfield purchased a new automobile from appellee Union City Chrysler-Plymouth, Inc. (Union City). While Hartsfield told Union City she did not have the money, Hartsfield tendered a check in the amount of $19,000 for the purchase of the vehicle based on Union City's representation that it would hold the check until she was able to secure financing. Union City held the check for three weeks, but before Hartsfield could obtain financing, Union City cashed the check whereupon Hartsfield's bank returned it for insufficient funds. Union City alleges that pursuant to OCGA § 16-9-20 (a) (2) (B), it sent a certified letter notifying Hartsfield that the check had been dishonored. While Hartsfield admits to receiving a certified letter from Union City, she claims the envelope addressed to her contained a letter written to someone else regarding an entirely different transaction. After Hartsfield failed to tender the face amount of the check and the applicable service charges demanded in the letter allegedly sent her, Union City swore out a warrant for her arrest. The charges were dismissed following a probable cause hearing.

Union City subsequently located a lender, World Omni Finance Corporation (Omni), willing to loan Hartsfield money for the bulk of the car's cost. In order to get the loan, Hartsfield had to pay some money down and trade in her old car. Union City demanded Hartsfield's signature on the loan papers, misrepresenting their terms and preventing Hartsfield from reviewing the document. Subsequently, Hartsfield learned that the interest rate on the loan was thirty-five percent and that over the four-year length of the loan she was obligated to pay $19,377.60 in interest on the $21,581.28 she was borrowing. She then offered to return the car to Union City but Union City refused, telling Hartsfield that she would be charged with storage costs should she leave the car. Hartsfield then returned the car to Omni. She never received the approximately $800 she paid or the old car that she traded in at the time she signed the loan papers.

Hartsfield commenced the instant action against Union City and two of its employees. The defendants answered the complaint and filed a motion to dismiss asserting that Hartsfield's malicious prosecution and fraud claims failed to state a cause of action. The trial court

granted defendants' motion to dismiss, finding the allegations contained in the complaint lacked merit. Although Hartsfield responded to the motion two weeks prior to the dismissal, the trial court's order erroneously stated that no response had been filed. Neither did the order indicate that any consideration had been given to Hartsfield's amended complaint that was filed with the court on the same day as her response to defendants' motion.

1. Even considering Hartsfield's response to the motion and assuming all allegations in the complaint and amended complaint are true, Hartsfield can prove no set of facts that would entitle her to relief on her claim of malicious prosecution. In order to successfully assert a cause of action for malicious prosecution, the plaintiff must demonstrate, among other things, that the defendant pursued criminal prosecution against the plaintiff without probable cause and with malice. See *Wal-Mart Stores v. Blackford*, 264 Ga. 612 (449 SE2d 293) (1994). Hartsfield asserts that Union City acted without probable cause and with malice in criminally prosecuting her for issuing a bad check. According to Hartsfield, she only wrote the check upon Union City's agreement that it would not be cashed until she obtained the funds necessary to cover it. Hartsfield did not have sufficient funds in the bank to cover the check, and this fact was known by Union City at the time she wrote the check. See *Russell v. State*, 155 Ga. App. 555 (271 SE2d 689) (1980) (offense of issuing a bad check is completed when the check is delivered, and it is the criminal intent to defraud present at that moment which the law proscribes). Thus, Hartsfield claims that Union City acted without probable cause and with malice in subsequently prosecuting her for writing the bad check when Union City induced her to write it and accepted it with the knowledge that the funds did not presently exist to pay it.

We find that the trial court properly dismissed this claim. Georgia law formerly permitted malicious prosecution claims arising from bad check prosecutions where the facts and circumstances reflected that the check's drawer had no intent to defraud the check's recipient;[1] however, in 1989, the Georgia legislature revised the law gov-

---

[1] In *Barnes v. Gossett Oil Co.*, 56 Ga. App. 220 (192 SE 254) (1937), the recipient of a bad check prosecuted the check's drawer. After being acquitted, the drawer then sued the recipient for malicious prosecution. The trial court dismissed the action, but this Court permitted the suit to stand as the evidence reflected that the check's writer and the check's recipient understood that funds did not exist to cover the check at the time it was written. This Court reasoned a jury could determine that, despite the terms of the check, the parties actually had an agreement for future payment. Thus, the check's drawer did not write the check with the intent to defraud, a necessary element in a bad check prosecution. "The gravamen of the offense [of writing a bad check] was an intent to defraud which is not shown where there is an extension of credit at the time the check is given; and the question whether or not the criminal process was instituted without probable cause and with malice . . . should have been submitted to the jury." (Citation omitted.) Id.

erning the issuance of bad checks. The new law drastically limited the circumstances under which a separate agreement made concerning a check may support a malicious prosecution action. In particular, OCGA § 16-9-20 (h) (2) provides: "In any civil action for damages which may be brought by the person who made, drew, uttered, executed, or delivered such [bad check, draft, or order], no evidence of statements or representations as to the status of the [check, draft, or order] involved or of any collateral agreement with reference to the [check, draft, or order] shall be admissible unless such statements, representations, or collateral agreement shall be written simultaneously with or upon the [check, draft, or order] at the time it is delivered by the maker thereof."

The check tendered by Hartsfield reflects no such statement, representation or collateral agreement, and Hartsfield's pleadings make no reference to a simultaneous separate writing regarding the check. Thus, Hartsfield's claim for malicious prosecution is, by statute, without evidentiary support. The trial court did not err in dismissing that portion of Hartsfield's complaint. In light of the above, it is not necessary to determine whether the notice allegedly provided by Union City pursuant to OCGA § 16-9-20 (a) rendered it immune from suit for malicious prosecution.

2. Hartsfield claims that the trial court erred in dismissing her fraud claim. We disagree. The contract signed by Hartsfield reflects that immediately above her signature, in bold type, is the warning not to sign the contract before reading it. At the top of the page, clearly visible, are the annual percentage rate, finance charge, amount financed, total of payments and total sales prices.

Fraud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence. *Hill v. Century 21 Max Stancil Realty*, 187 Ga. App. 754, 756 (371 SE2d 217) (1988); *Lorick v. NaChurs Plant Food Co.*, 150 Ga. App. 209, 210 (257 SE2d 332) (1979). "When the means of knowledge are at hand and equally available to both parties to a contract of sale, if the purchaser does not avail himself of these means, he will not be heard to say, in impeachment of the contract, that he was deceived by the representations of the seller." (Punctuation omitted.) *Hill*, supra. Hartsfield's "blind reliance" on defendants' representations as to the terms of the contract shows a lack of due diligence which is unjustified as a matter of law. See *Bennett v. Clark*, 192 Ga. App. 698, 699 (385 SE2d 780) (1989); *Moran v. NAV Svcs.*, 189 Ga. App. 825 (377 SE2d 909) (1989).

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

Decided November 1, 1995.

*J. Eugene Wilson*, for appellant.

*Smith, Gambrell & Russell, Bruce D. Cohen, Matthew S. Coles*, for appellees.