### A96A0502. ROBIN v. BELLSOUTH ADVERTISING & PUBLISHING COMPANY.
#### (471 SE2d 294)

BEASLEY, Chief Judge.

Robin, a Savannah attorney, sued BellSouth Advertising & Publishing Company ("BAPCO") over a feature called *"Real* Consumer Tips" found in its Savannah yellow pages advertising. The trial court dismissed his case for failure to state a claim, and we affirm because Robin cannot succeed, as a matter of law, on his claims for breach of contract, tortious interference with prospective business relations, and violations of the Fair Business Practices Act, OCGA § 10-1-390 et seq.

Tucked amid large and small advertisements for attorneys, *"Real* Consumer Tips" displays invite perusers of BAPCO's *"Real* Yellow Pages" to call a certain number for "free consumer information" on topics such as "selecting an attorney," "pre-nuptial agreements," and "what to look for in a personal injury attorney." Apparently, those who call these numbers also hear an advertisement from certain attorneys who pay BAPCO for this service. Robin had a yellow pages listing himself, but his practice was not featured in any *Real* Consumer Tips message.

Robin does not allege he was refused access to this advertising service; rather, he contends BAPCO's method of communicating the telephonic advertisements damaged him. He alleges that because the attorney advertisements included in the "consumer tips" messages do not reveal that attorneys paid for the ads, BAPCO creates the impression that the featured attorneys are more qualified or that BAPCO endorses them. His claims are based on that allegation. We take as true all the factual allegations of his complaint, as required when determining the merits of a motion to dismiss. *Morgan v. Vitrified Brick & Clay Co.*, 196 Ga. App. 779, 780 (1) (397 SE2d 49) (1990).

1. The trial court properly dismissed Robin's claim under the Fair Business Practices Act, OCGA § 10-1-390 et seq. Robin alleges BAPCO violated OCGA § 10-1-393 (b) (3) by creating "actual confusion . . . as to [the] affiliation, connection, or association with or certification by another" of these attorneys. BAPCO is exempt from this statute pursuant to OCGA § 10-1-396 (2) because the allegedly improper acts were committed in the course of its business as the publisher of an advertising periodical. Robin did not allege, and it does not appear, that BAPCO has any direct financial interest in the law practice of the featured attorneys. Although Robin argues that BAPCO receives compensation for these ads, the mere fact that it charges lawyers for advertising does not give it a financial interest in any lawyer's practice, including Robin's.

2. Robin's claim for breach of contract also fails. That claim is based on his argument that because he had a contract with BAPCO as a *Real* Yellow Pages advertiser, BAPCO breached its implied duty of dealing with him in good faith by "actively recommending potential clients" to attorneys featured in the *Real* Consumer Tips messages. Robin does not allege, and it does not appear, his contract with BAPCO prevented the company from accepting advertisements from other attorneys or even from recommending them. "[T]here can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do. [Cit.]" (Punctuation omitted.) *Southern Business Machines &c. v. Norwest Financial Leasing*, 194 Ga. App. 253, 256 (2) (390 SE2d 402) (1990); compare *Re/Max of Ga. v. Real Estate Group &c.*, 201 Ga. App. 787 (412 SE2d 543) (1991) (breach of exclusive contract).

3. The trial court properly dismissed Robin's claim that BAPCO tortiously interfered with his future client base by driving prospective clients to attorneys mentioned in *Real* Consumer Tips. To succeed on that claim, he would have to show he could, under some set of facts, prove BAPCO: 1) placed these audio advertisements improperly and without privilege; 2) did so without justification or legal excuse in an effort to damage Robin; 3) induced potential clients to avoid Robin; and 4) caused him injury. *Renden, Inc. v. Liberty &c. Partnership III*, 213 Ga. App. 333, 334 (2) (444 SE2d 814) (1994); *Green v. Johnston Realty*, 212 Ga. App. 656, 659-660 (4) (442 SE2d 843) (1994).

As this involves a motion to dismiss, we assume Robin could produce live witnesses to establish they were "fooled" by BAPCO into choosing another attorney over him, depriving him of valuable legal fees. *Morgan*, supra at 780 (1). We do so recognizing the difficulties of such proof. See *Bankers Health &c. Co. v. Fryhofer*, 114 Ga. App. 107, 110 (1) (150 SE2d 365) (1966), which held the testimony of an attor-

ney as to his lost future business was wholly speculative, and *Jenkins v. General Hosps. of Humana*, 196 Ga. App. 150, 151 (395 SE2d 396) (1990), which rejected the tortious interference claim of a doctor who could not name a single patient he failed to acquire because of a hospital's actions. Even with the assumptions, Robin's claim fails because he does not allege BAPCO maliciously intended to damage him.

The Restatement 2d of Torts, § 766B, Comment *d* states that a tortfeasor has the requisite "intent" to interfere with another's prospective contractual relations when he "desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." Robin does not allege BAPCO intentionally tried to drive clients away from him. Even if these "tips" may have been more effective in attracting clients to certain attorneys, as he argues, they do not support the claim that BAPCO directly induced any clients to patronize attorneys other than Robin. See *St. Mary's Hosp. of Athens v. Radiology Prof. Corp.*, 205 Ga. App. 121, 124-125 (2) (421 SE2d 731) (1992). If an effective ad touting only one lawyer's talents could be considered part of an intentional scheme to drive clients away from other attorneys, all successful advertisers could be subject to suit because of their success. Under the circumstances of this case, BAPCO was not an "intermeddler." *Renden*, supra at 336 (2).

Robin is correct that an action may be "malicious" when it is unauthorized and without legal excuse. *Green*, supra at 660 (4). But we reject Robin's argument that the advertisements were improper and "unauthorized" because they did not notify callers that subscribing attorneys paid for them, in violation of DR 2-101 (C) (5) of the State Bar's Directory Rules. That provision states: "A public communication for which a lawyer has given value must be identified as such unless it is apparent from the context that it is such a communication." State Bar Rules do not apply to lay persons, and violations of those rules do not subject a lay person to discipline or form the basis of a civil suit for damages. *Davis v. Findley*, 262 Ga. 612, 613 (422 SE2d 859) (1992); *Stevens v. Thomas*, 257 Ga. 645, 648 (1) (361 SE2d 800) (1987); *Bergen v. Martindale-Hubbell*, 248 Ga. 599, 600 (285 SE2d 6) (1981). Furthermore, it is obvious from the context in which these advertisements are presented that they are just that — paid advertisements.

None of the printed display ads featured on the same yellow pages as the *Real* Consumer Tips number indicate they are paid, either. It is general knowledge that information contained in the yellow pages constitutes advertising, not endorsement. BAPCO's yellow pages also classify attorneys by specialty, and some attorneys' ads tout their special talents. To hold that such classification constitutes

endorsement would be to invite suits from disenchanted clients whose attorneys were not so expert in a field as their *Real* Yellow Pages ad indicated.

BAPCO's actions were further privileged as fair competition and free speech. *American Bldgs. Co. v. Pascoe Bldg. Sys.*, 260 Ga. 346, 348 (2) (392 SE2d 860) (1990); *S & W Seafoods v. Jacor Broadcasting of Atlanta*, 194 Ga. App. 233, 237 (5) (390 SE2d 228) (1990). Even if BAPCO knew its "Tips" clients would receive more business than other Yellow Pages subscribers, that fact would not make its actions any less privileged or proper. Restatement 2d Torts, § 766B, Comment *d*. BAPCO must be free to offer its customers a wide variety of advertising selections. Some attorneys choose a simple listing of their name and phone number, while others take the entire back page of the phone book. Obviously, only one attorney per year can occupy the back of BAPCO's Savannah phone directory; the taped messages in *Real* Consumer Tips provide yet another advertising option. BAPCO's directory is a private publication which may accept or reject advertising as it chooses. *Loring v. BellSouth Advertising &c.*, 177 Ga. App. 307 (339 SE2d 372) (1985). Even if it is subject to some limitations by reason of its quasi-public nature, which was the view in the concurring opinion in *Loring*, supra at 313, BAPCO is not required to ensure that every Yellow Pages advertisement attracts an equal number of potential clients for its subscribers. See *Miami Herald Pub. Co. v. Tornillo*, 418 U. S. 241, 256-257 (94 SC 2831, 41 LE2d 730) (1974).

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MAY 9, 1996 — 

*Savage & Turner, Brent J. Savage, Robert B. Turner, Simon, Booth & Cook, William M. Simon*, for appellant.

*Bouhan, Williams & Levy, Leamon R. Holliday III, Timothy H. Edwards*, for appellee.