A97A0255. WILLIS v. UNITED FAMILY LIFE INSURANCE.
(487 SE2d 376)

SMITH, Judge.

Appellant George Willis brought this action alleging defamation, tortious interference with contract, and intentional infliction of emotional distress following the distribution by appellee United Family Life Insurance ("United") of two letters to its policyholders. The trial court granted United's motion to dismiss; this appeal followed.

Willis's complaint alleges that United wrongfully sent two letters to its policyholders. The first letter states: "Based on our records, Ms. Freida White, an employee of United Family, may have been collecting premiums for you on your policy. You may have also paid your monthly premiums to a local funeral home. NO ONE FROM UNITED FAMILY WILL COME TO YOUR HOME TO COLLECT PREMIUMS ANY MORE AND YOU SHOULD *NOT* PAY ANY PREMIUMS TO A LOCAL FUNERAL HOME, MS. WHITE OR ANYONE ELSE. *INSTEAD, PLEASE FORWARD ALL PAST DUE, CURRENT OR FUTURE PREMIUM PAYMENTS TO UNITED FAMILY'S HOME OFFICE.*"

Although the letter does not specifically mention Willis or his business and does not state any reason for the change, Willis alleges that it was sent in response to the termination of White for misappropriation of premium payments. According to Willis, White "worked out of" Willis's funeral home, collecting premiums on behalf of United, until United opened a local office in 1989 and required that all premium payments be made there instead of to White or at Willis's business. The complaint alleges that White continued to collect premiums despite this change and appropriated them to her own use; her conduct was discovered in 1994 when several policies lapsed for nonpayment of premiums. According to Willis, the letters forming the subject of his complaint were mailed approximately one month

after the discovery of White's misconduct.

Appellant asserts that his reputation was sullied by the reference to an unidentified "local funeral home" in a letter that also mentioned White. Although the letter identified White as an employee of United rather than of Willis, Willis asserts that his customers would assume that he or his funeral home could also be involved in White's improprieties.

The second letter, sent two days after the first, did not mention White. It informed United's customers that their insurance records were being moved from Willis's business to another facility and once more gave the new address for payment of premiums. Willis contends that, since the records had actually been moved earlier, the statement in the letter was false and therefore supports his claim against United under all three theories of recovery. We disagree and affirm the judgment of the trial court.

"When the sufficiency of the complaint is questioned by a motion to dismiss for failure to state a claim for which relief may be granted, the rules require that it be construed in the light most favorable to the plaintiff with all doubts resolved in his favor even though unfavorable constructions are possible. Not unless the allegations of the complaint disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts should the complaint be dismissed." (Citation and punctuation omitted.) *Hartsfield v. Union City Chrysler-Plymouth*, 218 Ga. App. 873, 874 (463 SE2d 713) (1995).

1. Willis appeals the dismissal of his defamation claim, contending that issues remain to be tried. The complaint here "is subject to the requirements of OCGA § 9-11-8 (f) that pleadings be construed liberally and reasonably to achieve substantial justice consistent with the statutory requisites of the CPA. Nonetheless, when the claim alleged is a traditionally disfavored cause of action, such as malicious prosecution, libel, and slander, the courts tend to construe the complaint by a somewhat stricter standard." (Citations, punctuation and emphasis omitted.) *Jacobs v. Shaw*, 219 Ga. App. 425, 427 (2) (465 SE2d 460) (1995). Applying this rule, we conclude that the face of Willis's complaint demonstrates that he can prove no set of facts amounting to defamation. The trial court therefore correctly held that the unambiguous statements in the letters are not capable of a defamatory interpretation.

(a) When an allegedly libelous statement is unambiguous, the trial court may decide as a matter of law whether or not the statement is libelous. *Southern Co. v. Hamburg*, 220 Ga. App. 834, 838 (470 SE2d 467) (1996). The court may not " 'hunt for a strained construction in order to hold the words used as being defamatory,' . . . [cit.]," *Webster v. Wilkins*, 217 Ga. App. 194, 195 (1) (456 SE2d 699)

(1995), but must give the words the plain and ordinary meaning that would be given to them by the average reader. Id.

Georgia law is abundantly clear that Willis cannot rely on rumor, innuendo, and extraneous circumstances to create an inference of defamation. Even express mention of one's name with another accused of misconduct, which did not occur here, does not constitute defamation, and such a complaint is subject to dismissal. *Stevens v. Morris Communications Corp.*, 170 Ga. App. 612, 614 (317 SE2d 652) (1984). In *Stevens*, this Court affirmed dismissal of a "patently absurd" complaint alleging that plaintiff was defamed by being named as counsel for a nursing home in a newspaper article reporting poor conditions there. In *Chance v. Munford, Inc.*, 178 Ga. App. 252 (342 SE2d 746) (1986), we held no libel existed when the defendant posted a notice stating that the plaintiff was not allowed in its store, regardless of what readers of the notice might speculate as to the reasons for plaintiff's exclusion. Finally, when a termination notice on its face contained no criticism of the plaintiff, it was not actionable even though it was contemporaneous with a theft investigation in which the plaintiff was a suspect, and even though defendant had held an earlier meeting of all its employees informing them that the plaintiff had been suspended for being "involved" in the theft. *Zielinski v. Clorox Co.*, 215 Ga. App. 97, 99 (2) (450 SE2d 222) (1994).

Willis's contention that innuendo renders these letters defamatory is without merit. "Appellant argues that the [letters are] libelous by innuendo because persons reading [them] would assume that [he] had done something terrible. . . . We believe appellant misconstrues the meaning of 'innuendo.' The office of an innuendo is to explain that which is of doubtful or ambiguous meaning in the language of the publication, but [it] cannot enlarge the meaning of words plainly expressed therein. Innuendo means only that where words are capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, which of the two meanings will be attributed to it by those to whom it is addressed or by whom it may be read. If the words of the alleged defamatory publication are unambiguous and are incapable of the meaning ascribed to them by innuendo, no action for libel will lie." (Citations and punctuation omitted.) *Chance v. Munford, Inc.*, supra, 178 Ga. App. at 252.

Compare *Southern Co. v. Hamburg*, supra, in which an employer distributed two press releases. The first stated that the plaintiff was being placed on administrative leave during an internal investigation of ethical standards in his department, and the second stated that the internal investigation *resulted* in the plaintiff's discharge and quoted the employer's executive vice president as stating " 'we're

committed to taking decisive actions when our business standards are not met.'" 220 Ga. App. at 839 (1). We declined to hold that these statements were not defamatory as a matter of law. Id.

In contrast, "[t]he words . . . in this case are clear and unambiguous and do not tend to injure appellant's reputation or expose [him] to 'public hatred, contempt, or ridicule.' [Cits.] The words of the [letters] contain no hurtful innuendo regarding appellant's character or behavior and a reader's subjective decision to impute such innuendo to the [letters] is not actionable as a defamation. [Cit.]" *Chance*, supra, 178 Ga. App. at 253.

Even construing the letters favorably toward Willis, we find that he could not prove any state of facts entitling him to relief. The first letter does not mention Willis or his business by name, nor does it allege wrongdoing on the part of any person. It simply instructs policyholders to transfer their premium payments to a new location. A defamatory interpretation cannot be extracted from the mere mention of "a local funeral home" in a letter that also mentions White, without any reference to criminal activity or wrongdoing on the part of anyone. Nor can a defamatory interpretation be extracted from a simple clerical notation regarding the transfer of records to and payment of premiums at a new location, even if those records had already been transferred. To do so requires the liberal application of speculation, rumor, and innuendo in precisely the fashion forbidden by *Zielinski* and *Chance*. Dismissal of the claim was proper.

(b) Moreover, it is apparent from the allegations of Willis's complaint that United's letters were privileged communications under OCGA § 51-5-7 (2) and (3).[1] Statements made in the good faith performance of a private duty, such as reports from an independent investigator to an insurance company, are privileged. *Haezebrouck v. State Farm Mut. &c. Ins. Co.*, 216 Ga. App. 809, 813 (455 SE2d 842) (1995); see also *Kitchen Hardware, Ltd. v. Kuehne & Nagel, Inc.*, 205 Ga. App. 94, 96 (2) (421 SE2d 550) (1992). Compare *Zielinski*, supra, 215 Ga. App. at 98 (1) (general announcement of theft investigation to employees "without a duty and authority to control or have knowledge" constituted publication).

We conclude that an insurer has a duty to communicate to its policyholders information which might, if not revealed, cause their coverage to lapse or be cancelled. Once United Family was made aware of White's misappropriation of premiums and consequent lapses of coverage, it was appropriate for United to notify its policyholders of the potential problem, without making explicit reference to

---

[1] We do not reach the issue of whether United's letters are subject to the exception to the publication rule as established in *Kurtz v. Williams*, 188 Ga. App. 14 (3) (371 SE2d 878) (1988).

criminal or improper conduct on anyone's part. Because White had worked out of Willis's funeral home, it was also appropriate for United to notify its policyholders not to make payments at a place where White might receive and divert them.[2] Had a claim been made on a policy that lapsed due to diversion of premiums after United Family became aware of White's conduct but failed to notify its policyholders, United Family could have been subjected to claims for bad faith penalties and attorney fees under OCGA § 33-4-6. See, e.g., *Globe Life &c. Ins. Co. v. Ogden*, 182 Ga. App. 803 (357 SE2d 276) (1987) (insurer liable for bad faith penalties after its agent misappropriated premiums and policy lapsed).

The communications also were appropriately limited to those authorized to receive them. United Family did not publish notices in a newspaper, poster, or circular exposed to the view of the general public, nor did it send a general mailing including past and prospective customers. Instead, it mailed individually addressed notices to its policyholders. As in *Haezebrouck*, supra, only those directly concerned were notified. Even construing the allegations of the complaint in his favor, Willis can prove no set of facts defeating this privilege; the status of the letters' recipients as policyholders was alleged by Willis himself. The trial court did not err in granting United's motion to dismiss on Willis's defamation claims.

2. Willis's claim alleging tortious interference with business relations is based entirely on the same actions that he contends constituted defamation. To make out a case of tortious interference a plaintiff must show that a defendant: (1) acted improperly and without privilege, (2) acted purposely, with malice, and with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) caused the plaintiff to suffer some financial injury. *Jenkins v. Gen. Hosps. of Humana*, 196 Ga. App. 150, 151 (395 SE2d 396) (1990). The trial court correctly concluded that Willis could prove no set of facts that would entitle him to relief, even considering his response to United's motion and assuming all allegations in the complaint are true. *Robin v. BellSouth Advertising &c. Co.*, 221 Ga. App. 360, 361-362 (3) (471 SE2d 294) (1996) (illustrating stringency of requirements).

3. Finally, based on the same factual allegations, Willis contests the dismissal of his claim for intentional infliction of emotional distress. The *Jenkins* court summarized the law in this area as well, stating that "Georgia permits a recovery for the tort of intentional infliction of emotional distress only for conduct which is of an outra-

---

[2] This would be of particular importance to policyholders who did not happen to recall White's name.

geous or egregious nature or so terrifying or insulting as to humiliate, embarrass, or frighten the plaintiff. [Cit.]" 196 Ga. App. at 152. A claim under this theory, however, may not succeed where the defendant uttered "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. [Cit.]" Id. The trial court dismissed Willis's claim on two grounds: (1) there was no outrageous conduct present; and (2) the conduct at issue was not directed at the appellant.

It was proper for the trial court to dismiss this claim on either ground. The conduct in this case, the sending of the allegedly objectionable letters at issue, was not "outrageous." This is a question of law and one resoundingly settled in favor of defendants. *Johnson v. Savannah College of Art &c.*, 218 Ga. App. 66, 67 (460 SE2d 308) (1995); see *Peoples v. Guthrie*, 199 Ga. App. 119, 121-122 (2) (404 SE2d 442) (1991) (though accusations of dishonesty or lack of integrity in individual's employment may be horrifying or traumatizing, they do not constitute intentional infliction of emotion distress); *Sossenko v. Michelin Tire Corp.*, 172 Ga. App. 771, 772-773 (324 SE2d 593) (1984) (warnings, job transfers, and harassment directed towards "whistleblower" do not constitute intentional infliction of emotional distress). Compare *American Finance &c. Corp. v. Coots*, 105 Ga. App. 849 (125 SE2d 689) (1962) (bill collector terrorized plaintiff and his pregnant wife at gunpoint); *Stephens v. Waits*, 53 Ga. App. 44 (184 SE 781) (1936) (defendant physically intimidated mourners at graveside).

The conduct in this case, moreover, was not directed at Willis. Willis's failure to show this essential element also supports the dismissal of his claim. See *Tucker v. News Publishing Co.*, 197 Ga. App. 85, 87 (2) (397 SE2d 499) (1990) (student injured in attack unsuccessfully sued defendant newspaper for merely printing stories about the attack); see also *Carter v. Willowrun Condo. Assn.*, 179 Ga. App. 257, 260 (5) (345 SE2d 924) (1986) (condominium renters unsuccessfully sued president of association after president sent objectionable letter to condominium owners). The mere sending of letters not directed at Willis's person and containing only a collateral reference to Willis's place of business will not support a claim for intentional infliction of emotional distress.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., and Ruffin, J., concur. McMurray, P. J., Beasley and Eldridge, JJ., concur in part and dissent in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

I respectfully dissent. Defendant United Family Life has not shown as a matter of law that Willis' complaint, which incorporates the two letters as exhibits, fails to state a claim upon which relief can

be granted on the claim of libel pursuant to OCGA § 51-5-1. On United Family Life's motion, Willis' pleadings "must be construed most favorably for [him] and all doubt resolved in [his] favor. [Cit.]" *Quetgles v. City of Columbus*, 264 Ga. 708 (450 SE2d 677) (1994).

Because the complaint is not sworn, the letters are not evidence and thus the motion brought under OCGA § 9-11-12 (b) (6) was not converted into one for summary judgment. *SunAmerica Financial v. 260 Peachtree St., Inc.*, 202 Ga. App. 790, 797 (3) (b) (415 SE2d 677) (1992). Willis has not had an opportunity to submit any evidence at this stage. The question is whether a jury is precluded from finding the letters or either of them libelous. This should not be decided only on a consideration of the letters taken out of context. "A publisher of matter is responsible, not only for the actual words published, but for the innuendo that may arise from such words. Words apparently innocent may convey a libelous charge when considered in connection with the innuendo and circumstances surrounding the publication." *Montgomery v. Pacific & Southern Co.*, 131 Ga. App. 712, 715 (5) (206 SE2d 631) (1974), overruled on other grounds, *Diamond v. American Family Corp.*, 186 Ga. App. 681, 684 (1) (368 SE2d 350) (1988). " 'Words harmless in themselves may become libelous when the circumstances under which they are published are such as to convey a covert meaning to the reader reflecting injuriously upon the reputation of the person to whom they refer.' " *Brandon v. Arkansas Fuel-Oil Co.*, 64 Ga. App. 139, 144 (12 SE2d 414) (1940). The office of innuendo is explained in *Reece v. Grissom*, 154 Ga. App. 194, 195 (1) (267 SE2d 839) (1980).

When a writing is capable of two meanings, one libelous and one not, "it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read." (Citations and punctuation omitted.) *Southern Co. v. Hamburg*, 220 Ga. App. 834, 838 (1) (470 SE2d 467) (1996).

Willis claims the evidence would show that the policyholders learned that their policies lapsed because Freida White had misappropriated their premiums, and that United Family Life had terminated her as an agent for this reason. Willis further alleges that White initially worked out of the funeral home, of which he was the second-generation owner and operator, and from which he also sold United Family Life insurance as a licensed salesman. Many of White's clients were referrals and were introduced to her by Willis, which was another connection between the two. The letters, written to rectify the misappropriation known to the recipients, did not dissociate the funeral home or its owner from the theft but instead treated them together with the thief. It would have been a simple matter to

isolate White as the wrongdoer and her independent activity as the sole reason for the changes in procedure.

Willis also alleges that shortly after the thefts were discovered by the policyholders and United Family Life, the latter wrote a general letter to the policyholders. It stated that based on the company's records, the policyholders may have been paying premiums to Freida White or "to" a local funeral home. In capital letters, the company warned that the policyholders "SHOULD *NOT* PAY ANY PREMIUMS TO A LOCAL FUNERAL HOME, MS. WHITE OR ANYONE ELSE." Instead, they were to be mailed directly to the home office. Two days later, it is alleged, a second letter told the policyholders that their records were being relocated from the "Willis Peoples Funeral Home" to the home office and that all future premium payments should be mailed there "[e]ffective immediately." It also assured policyholders that the relocation of records would not affect the "excellent service" of the insurance company. In fact the records had been moved in 1989 as a result of the company's opening an office in Fort Valley.

A policyholder receiving these letters, knowing the other facts alleged, could infer that Willis refused to relinquish records in 1989 and had retained some which by company action were finally being moved to the home office. Such a policyholder could also infer that Willis had continued to collect premiums at the funeral home since 1989, just as White had, despite the company's change of practice in 1989. What was allegedly written, in the context of what had transpired previously, could be found libelous by innuendo. "To maintain an action for libel, the matter published must either be libelous per se, or it must be so stated that it may reasonably be construed, by innuendo at least, to be libelous." *McCravy v. Schneer's*, 47 Ga. App. 703 (171 SE 391) (1933). "The pivotal questions are whether [the] statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false." *Eidson v. Berry*, 202 Ga. App. 587, 588 (415 SE2d 16) (1992). United Family Life does not contest the fact that Willis had nothing to do with its agent White's misdeeds.

Considering the circumstances alleged, I cannot conclude that "the published words are incapable of any other construction other than that they are not defamatory of the plaintiff" when read from the viewpoint of a policyholder. (Citations and punctuation omitted.) *Southern Co.*, supra at 838 (1). The meaning of the two letters, particularly taken together in light of what preceded them, is not "so unambiguous as to reasonably bear but one interpretation" insofar as Willis and his funeral home are concerned. (Citations and punctuation omitted.) Id. A jury could reasonably find, if what Willis alleges

is proved by competent evidence, that the letters snare him into the misappropriation problem with White, imply that he has been accepting premiums at the funeral home even though the practice was to stop in 1989, and further imply that he has covered up misappropriation by keeping the company's records in the intervening years.

"Though a defamatory charge may be made in indirect terms or by insinuation, the publication must be construed as a whole, and the words charged as being defamatory are to be taken in their plain, natural, and ordinary meaning, to be understood by the court as other people would understand them, according to the sense in which they appear to have been published and the idea they were meant to convey." *Garland v. State*, 211 Ga. 44, 46 (84 SE2d 9) (1954), a criminal case but citing civil cases for these principles. The real meaning of ambiguous expressions can be "explained by reference to the circumstances." *Central of Ga. R. Co. v. Sheftall*, 118 Ga. 865, 867 (1) (45 SE 687) (1903). The question of "the meaning and import of the language contained in the publication[s]" is within the province of the jury. *Park & Iverson v. Piedmont &c. Life Ins. Co.*, 51 Ga. 510, 514 (1874).

I concur in affirmance of dismissal of the remaining claims.

I am authorized to state that Presiding Judge McMurray and Judge Eldridge join in this opinion.

DECIDED MAY 13, 1997 —
RECONSIDERATION DENIED JUNE 4, 1997 — 

 Before Judge Goger.
*Adams & Jordan, Virgil L. Adams*, for appellant.
*Alston & Bird, Jay D. Bennett, Cynthia L. Counts*, for appellee.