Timothy C. Batten, Sr., United States District Judge
This case comes before the Court on Plaintiff Rory Dougherty's motion [90] to open discovery, Defendant Craig Harvey's motion [91] for summary judgment, and Defendant North American Senior Benefits, LLC's ("NASB") motion [93] for summary judgment.
I. Background
Harvey is a former employee of Dougherty's insurance company. After an acrimonious termination from that position, Harvey co-founded Defendant NASB, which competes with Dougherty's firm.
On March 10, 2017, Harvey gave a keynote address at a conference hosted by NASB. Roughly three hundred people from the insurance industry were present. During his address, Harvey projected a picture of Dougherty standing between Harvey and another man onto a screen for the audience to view, and stated:
[T]he guy in the middle there he may or may not be HIV positive, I don't know, I have no idea, I have no idea I can't confirm nor deny that, that he is or isn't, I don't know, Chad, I don't know, I don't know ... I have no idea.
[110] ¶ 36.
On March 15, a video of the speech was uploaded to the NASB website. The video was removed from the website the next day.
*1290 On April 10, Dougherty filed this lawsuit against Harvey and NASB, alleging defamation and false light invasion of privacy. Dougherty seeks actual and punitive damages.
In separate motions, Harvey and NASB seek summary judgment on Dougherty's claims. They argue that Harvey's statement cannot constitute defamation per se; that Dougherty fails to allege special damages as required to maintain a defamation claim; and that because the statement is allegedly defamatory, the false light claim fails as well. NASB additionally argues for summary judgment on the basis that it is not liable for the statement Harvey made at the conference. Finally, NASB seeks summary judgment on Dougherty's punitive damages claim.
II. Summary Judgment Standard
Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." FindWhat Inv'r Grp. v. FindWhat.com , 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." Id. Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Id.
"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." Id. (citing Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. United States v. Four Parcels of Real Prop. , 941 F.2d 1428, 1437-38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." Id. at 1438 (citing Celotex Corp. , 477 U.S. at 331, 106 S.Ct. 2548 ). The second is to show that "there is an absence of evidence to support the nonmoving party's case." Id. (quoting Celotex Corp. , 477 U.S. at 325, 106 S.Ct. 2548 ).
If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. Id. At this point, the nonmoving party must " 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc. , 64 F.3d 590, 594 (11th Cir. 1995) (quoting Celotex Corp. , 477 U.S. at 324, 106 S.Ct. 2548 ).
III. Discussion
A. Defamation Per Se
Defendants argue that Harvey's statement cannot support a defamation per se claim because it is not injurious on its face and requires innuendo.
Defamation per se consists, inter alia, of "[c]harging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society," O.C.G.A. § 51-5-4(a)(2). Defamation per se does not require a showing of special damages. O.C.G.A. § 51-5-4(b).
"[A] court looks to 'the plain import of the words spoken' in order to ascertain whether the words constitute slander *1291 per se." Bellemead, LLC v. Stoker , 280 Ga. 635, 631 S.E.2d 693, 695 (2006) (quoting Palombi v. Frito-Lay, Inc. , 241 Ga.App. 154, 526 S.E.2d 375, 377 (1999) ).
Defamatory words which are actionable per se are those which are recognized as injurious on their face-without the aid of extrinsic proof. However, if the defamatory character of the words [does] not appear on their face but only become defamatory by the aid of extrinsic facts, they are not defamatory per se, but per quod, and are said to require innuendo.
Zarach v. Atlanta Claims Ass'n , 231 Ga.App. 685, 500 S.E.2d 1, 5 (1998) (alteration in original) (quoting Macon Tel. Publ'g Co. v. Elliott , 165 Ga.App. 719, 302 S.E.2d 692, 696 (1983) ).
"[W]hen words are defamatory per se, innuendo-which merely explains ambiguity where the precise meaning of terms used in the allegedly slanderous statement may require elucidation-is not needed." Bellemead , 631 S.E.2d at 695-96 (citation omitted). "[I]t is inappropriate to rely on innuendo to determine if the words at issue constitute slander per se." Id. at 696. Innuendo is defined as "[a]n oblique remark or indirect suggestion, usu[ally] of a derogatory nature." Innuendo , BLACK'S LAW DICTIONARY (10th ed. 2014).
Defendants argue that on its face, Harvey's statement is not defamatory and that the words "may or may not be HIV positive" are only an indirect suggestion of Dougherty having a communicable disease. According to Defendants, one must infer that Harvey would only make such a statement to imply that Dougherty had HIV. Thus, Defendants argue, the statement requires innuendo in that Harvey's "words are capable of two meanings, one of which would be libelous and actionable and the other not ...." Willis v. United Family Life Ins. , 226 Ga.App. 661, 487 S.E.2d 376, 380 (1997) (quoting Chance v. Munford, Inc. , 178 Ga.App. 252, 342 S.E.2d 746, 747 (1986) ). The Court disagrees.
On its face, Harvey's statement is a form of apophasis-a common rhetorical device in which the speaker or writer brings up a subject couched in a denial or dismissal and stated expressly to make the point denied or dismissed. That is, the device is utilized in order to "deny[ ] one's intention to speak of a subject that is at the same time mentioned or insinuated. See Webster's Unabridged Dictionary of the English Language, RHR Press (2001). The use of this device has the effect of emphasizing the subject while maintaining plausible deniability. See www.merriam-webster.com/dictionary/apophasis (last visited June 26, 2018)." Robinson v. Perales , 894 F.3d 818, 829 (7th Cir. 2018).
Though the term itself is perhaps obscure to non-rhetoricians, apophasis is a common and familiar device that has been used for thousands of years to communicate-on the face of a statement-the very facts the statement pretends to disclaim.[1]
*1292 To ignore the obvious import of the defining feature of Harvey's statement would be to improperly elevate form over substance.
Defendants cite Bellemead 's discussion of innuendo as dispositive when applied to Dougherty's claim. However, the statement in Bellemead required either additional facts or inferences to make plain that something injurious was said. That is the classic form of innuendo in a defamation case: additional explanation or interpretation is needed to turn what appears to be an anodyne statement into a defamatory one.
In the law of defamation, an innuendo is the plaintiff's explanation of a statement's defamatory meaning when that meaning is not apparent from the statement's face. For example, the innuendo of the statement "David burned down his house" can be shown by pleading that the statement was understood to mean that David was defrauding his insurance company ....
Innuendo , BLACK'S LAW DICTIONARY (10th ed. 2014).
In Bellemead , the allegedly per se defamatory statement, which pertained to the dissolution of a real estate development company, was, "Jerry isn't going to be selling lots here in Warner Robins much longer. He is probably going back to Valdosta, so if you want to buy these lots, you need to sign a contract with me." 631 S.E.2d at 695. While the statement was arguably an assertion that Jerry's company was going out of business, the Georgia Supreme Court held that the statement was not injurious on its face. Indeed, the number of potential interpretations of the statement in Bellemead are limited only by the imagination. By contrast, the out-of-place insertion of Harvey's apophatic HIV statement is susceptible to but one interpretation-that Dougherty is HIV positive.
Thus, the defamatory character of Harvey's statement is apparent on its face. Zarach , 500 S.E.2d at 5. The plain import of the words spoken charge Dougherty with having HIV-a "contagious disorder" within the meaning of O.C.G.A. § 51-5-4(a)(2). Neither extrinsic facts nor innuendo is "necessary to establish the defamatory character of the words ...." Bellemead , 631 S.E.2d at 695. As such, summary judgment will be denied on this claim.[2]
B. False Light Invasion of Privacy
Defendants argue that Harvey's statement was not heard by the public at large, and that because Dougherty's false light invasion of privacy claim is based on the same allegedly defamatory statement, it is subsumed by the defamation claim and fails as a matter of law. Dougherty has acknowledged that he pled the false light claim in the alternative and that it cannot succeed if the statement is found to be defamatory.
"In order to survive as a separate cause of action, a false light claim must allege a nondefamatory statement. If the statements alleged are defamatory, the claim would be for defamation only, not false light invasion of privacy." Bollea v. World Championship Wrestling, Inc. , 271 Ga.App. 555, 610 S.E.2d 92, 96 n.1 (Ga. Ct. App. 2005) (citing *1293 Time, Inc. v. Hill , 385 U.S. 374, 390-391, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) ). Because the Court has found Harvey's statement to be defamatory, summary judgment is appropriate on Dougherty's false light claim.
C. NASB's Liability for Harvey's Statements
NASB argues that it is not liable for Harvey's statement because he is not an alter ego of the company and because NASB did not ratify the statement.[3]
1. Alter Ego
In Georgia, a corporation is not liable for slander under a theory of respondeat superior. Galardi v. Steele-Inman , 266 Ga.App. 515, 597 S.E.2d 571, 575 (2004).
"It is well settled law in Georgia that the doctrine of respondeat superior does not apply in slander cases, and a corporation is not liable for the slanderous utterances of an agent acting within the scope of his employment, unless it affirmatively appears that the agent was expressly directed or authorized to slander the plaintiff."
Woods v. Allsteel, Inc. , No. 1:16-cv-03048-RWS, 2017 WL 3597505, at *3 (N.D. Ga. June 5, 2017) (quoting Smith v. Tr. Co. Bank , 215 Ga.App. 413, 450 S.E.2d 866, 869-70 (1994) ).
However, under Georgia defamation law a corporation can be held liable for slander made by an alter ego of the corporation. Id. (quoting Sims v. Miller's, Inc. , 50 Ga.App. 640, 179 S.E. 423, 424 (1935) ). In such cases, the corporation's president is presumed to be its alter ego, but "no such presumption exists in favor of any other official." Id. (quoting Sims , 179 S.E. at 424 ).
Dougherty concedes that NASB did not expressly authorize Harvey's statement. However, Dougherty contends that Harvey is the alter ego of NASB, in which event the corporation would be liable for his defamatory statement. See Stringfield v. IAP World Servs., Inc , 784 F.Supp.2d 1378, 1386 (S.D. Ga. 2011) ("If it affirmatively appear[s] that a slanderous utterance was made by ... the alter ego of the corporation, the corporation would be liable." (quoting Sims , 179 S.E. at 424 ) ).
Because Harvey is not the president of NASB, no presumption exists that he is an alter ego of the company. But that does not mean that there is no evidence that Harvey is NASB's alter ego.
Harvey is a minority shareholder of NASB and co-founded the company with its current president and CEO, Chad Milner. Harvey and Milner split the responsibilities of running the company. Harvey supervises the insurance agents, runs the recruiting events, and acts as the face of the company in most of its publications, while Milner manages the office.
NASB maintains that Harvey is an independent contractor and minority stakeholder in the company and has no role in the day-to-day operations of NASB's office or oversight of the employees. However, this is an overly technical characterization of the evidence. NASB has as many as sixty employees, but there is evidence that most of these employees are leased from another company owned by Milner on an as-needed, per-task basis. And while Harvey may have no role in the day-to-day affairs of the "office," he testifies that he is *1294 completely in charge of the hundreds of insurance agents upon whom NASB's business relies.
Harvey testifies that he is a partner, an independent contractor, and a W-2 employee of NASB, and is responsible for overseeing NASB's hundreds of insurance agents. He considers himself second-in-command to NASB's president, but as the head of the field side of the company, the other partners do "[w]hatever [he] tells them to" do in matters related to the field side of the business. [99] at 82:1. "[Milner] stays away from the agents, I stay away from the employees. I mean that's just the way we set up our marriage." Id. at 81:12-14. "[I]t's [Milner], then me, and then NASB," Id. at 82:2. He has consistently represented the company in videos made available to the public and through numerous live speaking engagements. Harvey's statement was made at an NASB conference where he was the keynote speaker representing NASB in an effort to recruit agents to work for NASB.
Taken together, the evidence of Harvey's role within the company presents an issue of fact for the jury as to whether Harvey spoke on behalf of NASB as its alter ego.
NASB also argues that Harvey was not authorized to make the particular statement disparaging Dougherty and his company. But under Sims , this is not the proper inquiry; an alter ego theory does not require that the company authorize or direct the statement. Defendants' citation of Anderson v. Housing Authority of Atlanta , 171 Ga.App. 841, 321 S.E.2d 378 (1984), does not require a different result.
In Anderson , the Georgia Court of Appeals did not analyze whether the employee was the housing authority's alter ego; rather, it asked only whether the housing authority could be liable for authorizing the statement. Id. at 380. As explained above, these are separate paths to corporate liability. "If it affirmatively appear[s] that a slanderous utterance was made by an officer, agent, or servant by 'the direct authority' or 'direction' of the corporation, or that it was made by the alter ego of the corporation, the corporation [will] be liable." Sims , 179 S.E. at 424 (emphasis added) (citation omitted) (quoting Hazelrigs v. J.M. High Co. , 49 Ga.App. 866, 176 S.E. 814, 815 (1934) ).
Thus, Dougherty has shown that an issue of fact remains for the jury as to whether Harvey acted as NASB's alter ego, and summary judgment will not be granted to NASB on this ground.
2. NASB's Ratification of Harvey's Statements
NASB argues that as a matter of law it cannot be held liable for defamation through ratification of Harvey's statement because Georgia courts do not recognize ratification of slander as a viable theory. Dougherty, on the other hand, argues that NASB can be held liable under a ratification theory despite the fact that no Georgia court has ever so held.
As discussed above, a corporation can commit slander under an alter ego theory, but otherwise "lacks the capacity to commit slander and, absent evidence that the corporation expressly directed the saying of the slanderous words," a corporation cannot be held liable for the slander. Church of God, Inc. v. Shaw , 194 Ga.App. 694, 391 S.E.2d 666, 667 (1990). As explained in Ray v. American Legion Auxiliary , 224 Ga.App. 565, 481 S.E.2d 266, 268 (1997), Shaw "rejects the legal efficacy of corporate liability for slander by ratification."
The Court declines Dougherty's invitation to break new ground in Georgia law. Thus, even if true, Dougherty's claim that *1295 NASB ratified Harvey's statements fails as a matter of law to state a claim for defamation against NASB. However, because liability against NASB may be found if a jury concludes that Harvey acted as NASB's alter ego, summary judgment will be denied on this claim, too.
3. Punitive Damages
NASB argues that summary judgment is appropriate on Dougherty's claim for punitive damages under O.C.G.A. § 51-5-12, which provides a defense against punitive damages in defamation cases based on the "visual or sound broadcast of an erroneous statement alleged to be defamatory." The statute does not bar claims for defamation published in person to a live audience, as occurred here. Though Dougherty does allege that NASB published the video online, his defamation claim is primarily based upon the speech before an audience, for which there is no statutory shield through retractions. There is sufficient evidence in the record (including additional statements from the address itself) of Harvey's alleged ill-will toward his former employer to create a fact question regarding whether his statement was made with the malice required to support a claim for punitive damages. NASB's potential liability is based upon an alter ego allegation, not solely the republication of the video of Harvey's statement. As such, summary judgment will be denied on this claim.
IV. Motion to Open Discovery
On April 25, 2018, Dougherty filed a motion [90] to open discovery into Harvey's financial records for punitive damages. In response, Harvey asked the Court to extend the time for their response to the motion to open discovery until after this Court had ruled on summary judgment. As the Court will deny Defendants' motions for summary judgment on the defamation claim, Harvey and NASB are ordered to respond to the motion to open discovery within fourteen days of this Order.
V. Conclusion
For the foregoing reasons, Defendants' motions [91, 93] for summary judgment are denied. Defendants are ordered to respond to the motion [90] to open discovery within fourteen days.
IT IS SO ORDERED this 31st day of July, 2018.

See, e.g. , Thomas Gibbons, Rhetoric; Or, A View of Its Principal Tropes and Figures, in Their Origin and Powers 157-58 (1767) (quoting Cicero, "Omission, says he, is when we say we pass over, or do not know, or will not mention, that which we declare with the utmost force. As in this manner: I might speak concerning your youth, which you have spent in the most abandoned profligacy, if I apprehended this was a proper season, but I now purposely wave it. I pass by the report of the Tribunes, who declared that you [were] defective in your military duty. The affair about the satisfaction concerning the injuries you had done to Labeo does not belong in the matter in hand: I say nothing of these things; I return to the subject of our present debate. So again, I do not say that you [were] bribed by the allies. It is foreign to my purpose to mention how you plundered the cities, kingdoms, and the houses of all wherever you came: all your robberies and rapine I pass over in silence."); see also, e.g. , Donald J. Trump (@realDonaldTrump), Twitter (Nov. 11, 2017, 4:48 PM), https://twitter.com/realdonaldtrump/status/929511061954297857 ("Why would Kim Jong-un insult me by calling me 'old,' when I would NEVER call him 'short and fat?' ").

Dougherty brings a single count of defamation against both Defendants. Because the Court finds the statement constitutes defamation per se, it is not necessary to reach the parties' arguments regarding the additional elements of defamation per quod.

NASB also argues that it did not authorize or direct Harvey's statement, that it did not publish Harvey's statement, and that it is not liable under a theory of respondeat superior. Because Dougherty admits that he is not pursuing these theories, the Court does not address those arguments.